## LEBBY v. AHRENS.

1. When the testimony is so conflicting as to present a question of credibility this court will rarely, if ever, feel at liberty to interfere with the findings of fact by a master or referee, concurred in by the Circuit Judge.

2. False representations of any material fact by the seller, which were calculated to induce and did actually induce the buyer to make a purchase, are sufficient to support an action for the recovery of the purchase money ; nor is it necessary that such representations should have constituted the *sole* inducement.

3. Plaintiff was induced to contribute $400 for a one-fifth interest in a

newspaper represented by defendant to be owned by a joint stock company with a capital of $2,000, and that S. (a gentleman of means and character) was one of the company, when defendant knew that there was no company and no capital, and the entire outfit of the paper was paid for with plaintiff's money. *Held,* that plaintiff was entitled to recover of defendant the money so advanced, and to have this outfit sold for its payment.

Before PRESSLEY, J., Berkeley, June, 1885.

The report of master Leland in this case was as follows:

This case was referred to me under an order of this honorable court, dated July 17, 1884, to take the testimony and report upon the issues of law and fact involved in the same. I have been attended by the solicitors in the case from time to time, and find the pleadings in the case all correct. The references have been numerous, and the testimony taken very voluminous. It will be impossible for me to give a full analysis of all the examinations had, without making my report as voluminous as the testimony, and then, probably, making confusion worse confounded. I will, therefore, submit the evidence taken at the time by a stenographer, and vouch for its accuracy, as a part of this report as my report. I will confine myself to a history of the case, a statement of such facts as seem to me to be clearly made out, and then to give my conclusions of law and fact. In making this statement, I have been guided, not only by the circumstances attending the oral examinations, the manner, bearing, and general reputation of each witness, but by a careful review of the testimony when reduced to writing, and full arguments by the counsel on both sides.

Some time in March, 1884, the defendant, W. H. Ahrens, purchased a hand printing press and some printing material, for the purpose of publishing a weekly newspaper in the town of Summerville. The cost of the press was from $75 to $150. To obtain aid in defraying the expenses of this outfit he induced Mr. T. W. Stanland, a man of means, living in Summerville, to endorse a note in bank for $100, which note defendant afterwards paid. The first issue of the paper was on the 12th, and the second issue on the 19th of April, 1884. About the 20th of

April, 1884, Ahrens approached the plaintiff, H. S. Lebby, in Summerville, and suggested to him to purchase some stock in the paper, stating that it was a joint stock company, that said Stanland was one of the stockholders, and that $400 would entitle him (Lebby) to one-fifth of the stock. Lebby then went to see and consult Mr. George Tupper, who usually attended to his business matters. Said Tupper was published in the paper as "President of the Summerville Herald Publishing Company," and when questioned about the "company," testified that he was requested by Ahrens to act as president, and that he believed that both Mr. Stanland and a Mr. Boyle were members of the company.

After this interview with Tupper, Lebby agreed to take one-fifth interest for $400. Ahrens, purporting to act as business manager for the publishing company, executed an instrument, selling to Lebby one-fifth of the stock, for which Lebby paid to Ahrens $400. At the time of this sale and payment, the entire cost of outfit for the paper was between $250 and $300, and neither Mr. Stanland, Mr. Boyle, nor any one else, excepting Ahrens, had any pecuniary interest in the paper. About this time, however, Ahrens was negotiating with Stanland to sell him (Stanland) an interest in the paper—Stanland being wholly unaware that Lebby had bought any stock, and with these negotiations going on, Ahrens *induced* Stanland to purchase a cylinder press for the company at $320. This was paid by Stanland himself, the understanding being that Stanland should own the property until the sale to him of an interest should be perfected. Ahrens representing to Lebby that he was in want of funds for the paper, induced him (Lebby) to advance $300, for which he (Ahrens) gave his note, secured by a mortgage of the cylinder press. In the mean time Stanland, finding it impossible to get Ahrens to any definite agreement, and that he did not intend to keep his word as to the sale of any interest in the paper, demanded from Ahrens the repayment of the $320, and Ahrens thereupon procuring from Lebby the sum of $300, as above stated, paid it to Stanland.

Mr. Lebby, having his suspicions aroused, went to Stanland and asked whether or not he was a member of the publishing company, and thereupon, by comparison of statements, each ascer-

tained for himself, and for the first time, that there was no joint
stock publishing company—that Mr. Stanland had no pecuni-
ary interest in the paper, and that the plant of the paper cost
less than Lebby had paid in, the $700 paid in by Lebby exceed-
ing the cost of the whole outfit. Mr. Lebby, finding this to be
the case, has brought this action to have the whole agreement
between himself and Mr. Ahrens annulled on the ground of deceit
and false representations, and to have the whole property sold,
and the moneys advanced by him repaid first, there being a
resulting trust in his behalf for property purchased with his
money.

Mr. Ahrens attempted to establish, 1st, that the agreement as
to the $400 was a bargain and sale. 2d. Testimony by plaintiff,
that he had no interview with Ahrens between Sunday, April 20,
1884, and the execution of the agreement. 3d. That Tupper
was agent for Lebby. 4th. That Lebby had the right of inspect-
ing, and did inspect the property bought. 5th. That the prime
consideration in the purchase was employment in the office of the
paper. 6th. That he did obtain employment, and voluntarily
retired. 7th. That there was no proof that the plant was pur-
chased with Lebby's money, and therefore there can be no result-
ing trust. 8th. That there was no proof that Ahrens represented
the plant as worth $2,000. * * *

[Then follows the conclusions of fact and law, copied into the
opinion.]

The agreement of April 22, 1887, was as follows:

This agreement made and entered into this day, by and between
H. S. Lebby, of the first part, William H. Ahrens, business
manager of the *Summerville Herald*, of the second part, wit-
nesseth:

That the party of the first part agrees to contribute four hun-
dred dollars to the common stock of "*The Summerville Herald*,"
as a shareholder thereof; and to receive in consideration of his
contribution, one-fifth of the actual profits realized by the stock-
holders, to be paid unto him annually and semi-annually, as may
be required, in settlement of his interest in the said paper, by
virtue of his contribution aforesaid.

The party of the second part, in consideration of the contribu-
tion of the said amount of four hundred dollars, by the party of
the first part, agrees to pay unto him, semi-annually, or annually,

one-fifth of the actual profits derived by the Summerville Publishing Company, in the conduct of "*The Summerville Herald.*"

Witness our hands and seals this 22d day of April, *Anno Domini*, one thousand eight hundred and eighty-four.

HENRY S. LEBBY, [L. S.]<br>
W. H. AHRENS, [L. S.]

*Bussiness Manager of The Summerville Herald.*

The Circuit decree was as follows:

This case comes on exceptions by defendant to the master's report, which sufficiently states the issues of fact, so that I need not repeat them. The main ground of exceptions is based on the theory, that the within agreement between the parties, showed a bargain and sale, and that the master erred in not so finding. I see not a word in said agreement, which even remotely indicates a bargain and sale. It is a plain undertaking by plaintiff, "to contribute four hundred dollars to the common stock of the *Summerville Herald*, as a shareholder therein," for which he is to receive "one-fifth of the actual profits realized by the stockholders."

This is no bargain and sale, but is manifestly a subscription to the common stock of a company in which there were to be other stockholders, and of which the capital stock was to be two thousand dollars. It can have no other meaning by any fair rule of construction, and the master was right in finding that the oral testimony sustains this view. Otherwise, the idea of bargain and sale would make it appear that the plaintiff, who may be credited for having at least a moderate share of common sense, nevertheless actually paid $400 for one-fifth interest in a paper not yet begun, and of which the whole outfit had cost not more than $300. This view could not be sustained upon contradictory testimony, even if the written agreement were not plainly against it.

The report of the master is hereby confirmed, and it is ordered and adjudged, that the defendant do pay to the plaintiff the sum of seven hundred dollars, with interest, &c.

*Mr. N. K. Perry* read argument of *Jennings W. Perry*, deceased, for appellant.

*Messrs. Mitchell & Smith*, contra, upon the second point con-

sidered by the court *cited* 22 *Pick.*, 48; 120 *Mass.*, 20; 12 *Metc.*, (*Mass.*), 549; 134 *Mass.*, 56.

March 14, 1887. The opinion of the court was delivered by

Mr. Justice McIver. The details of the transactions between these parties, which led to the present controversy, are so fully and clearly set forth in the report of the master, that it seems unnecessary to repeat them here. It may be stated in brief that the defendant desiring to establish a newspaper in the town of Summerville, called "The Summerville Herald," two numbers of which had been issued, as the business manager of said paper entered into a written agreement with the plaintiff on April 22, 1884, a copy of which will be found in the record, whereby the plaintiff agreed "to contribute four hundred dollars to the common stock of 'The Summerville Herald,' as a shareholder thereof," in consideration whereof the defendant, as such business manager, agreed to pay to the plaintiff "semi-annually, or annually, one-fifth of the actual profits derived by the Summerville Publishing Company, in the conduct of The Summerville Herald," under which agreement the said sum of four hundred dollars was then paid by the plaintiff to the defendant. At the time of this transaction, as appears from the report of the master, the entire cost of the outfit for the paper was between $250 and $300. Soon after this, however, another printing press, called a cylinder press, was purchased, and the defendant representing to the plaintiff that he was in want of funds for the paper, induced the plaintiff to loan him the further sum of $300, for which the defendant gave to the plaintiff his own note secured by a mortgage of the cylinder press.

The allegation on the part of the plaintiff is that he was induced by the false and fraudulent representations, set forth in the complaint, to contribute the said sum of $400 to the stock of the Publishing Company, and the object of the action is to recover back the said sum of money, as well as the sum loaned on the mortgage of the cylinder press, and pending the action that a receiver be appointed. The motion for the appointment of a receiver was refused, upon what ground is not stated, but we presume it was because the defendant had offered in his answer to give to the

plaintiff a mortgage on the entire property to secure him; for we find that the defendant did give such mortgage to the clerk of the court to secure the payment to the plaintiff of such sum as he should, by the final decree in this cause, be entitled to receive.

The master, to whom the issues · in the action were referred, found, as matters of fact: "1st. That the defendant urged the plaintiff, on April 20, 1884, to pay over to him $400, which would entitle him to one-fifth of the capital of the Publishing Company, thus representing said capital as worth $2,000, and that Stanland was one of the company. 2nd. That the Summerville Publishing Company was a myth, that no such joint stock company existed at the time or at any time since. 3rd. That relying upon these representations the plaintiff agreed to purchase one-fifth of said stock for $400, and paid that sum to Ahrens. 4th. That these representations were untrue, and known to the defendant at the time to be untrue; that the whole cost of the plant of the paper, at the time, did not exceed $300, and that Mr. Stanland had not contributed any money to this plant. 5th. That the whole amount paid in by Lebby, viz., $700, more than covered the entire cost of everything connected with the paper, and that $300 of this was procured from him on the representation that it was to be used *for the paper*, whereas it was used to pay Stanland for what he had advanced for the cylinder press, which press Ahrens took in his own name and claims as his individual property." And as his conclusions of law he found "that Lebby has a right to annul the said agreement between himself and Ahrens as procured in fraud; also to the mortgage for $300." He therefore recommended that the whole property of The Summerville Herald office be sold, and the proceeds be applied first to the payment of the costs of these proceedings and the balance to the payment of the $700, advanced by Lebby, and that Ahrens be adjudged to pay any deficiency.

The case came before Judge Pressley upon exceptions to this report, who overruled the exceptions and confirmed the report, rendering judgment for the plaintiff as recommended by the master. From this judgment the defendant appeals upon several grounds, which, however, raise substantially only two questions, to wit: 1st. Whether there were any false and fraudulent repre-

sentations made by the defendant to the plaintiff as an inducement for him to enter into the contract? 2nd. Whether, if so, such representations were of such a character as would entitle the plaintiff to recover?

The first is a pure question of fact, and under the well settled rule of this court the finding below must be sustained, inasmuch as it is perfectly manifest that there is testimony, which, if believed, would be sufficient to sustain it, although there may be conflicting testimony. When the testimony is so conflicting as to present a question of credibility, this court would rarely, if ever, feel at liberty to interfere with the finding of fact by a master or referee, concurred in by the Circuit Judge. *Gary* v. *Burnett,* 16 *S. C.,* 632; *Dawson* v. *Niver,* 19 *Id.,* 606.

As to the second question. While it may be true that false representations as to the value of the thing sold, being, as they usually are, mere expressions of opinion, will not, as a general rule, be sufficient to sustain an action, yet where there is a false representation of any material fact, which, if true, would be calculated to induce, and did actually induce, the purchaser to make the purchase, such false representation will be sufficient to sustain the action. Nor is it necessary that such false representations should be the *sole* inducement to the contract, as seems to be contended for by the counsel for appellant. In addition to the cases cited by respondent's counsel, see 2 *Pars. Cont.,* *773 (6th *edit.*); American notes to *Pasley* v. *Freeman,* 2 *Sm. Lead. Cas.,* 114; *Chisolm* v. *Gadsden,* 1 *Strob.,* at page 223. These authorities recognize the doctrine, that if the false representation, either in whole *or in part,* induced the plaintiff to enter into the contract, that will be sufficient; the material inquiry being, not so much whether the false representations were the *sole* inducement to the making of the contract, but whether they so contributed to induce the purchase, as without them the purchase would not have been made.

Testing this case by these principles, it is quite clear that the false representations which the master found as matter of fact induced the plaintiff to make the contract, were amply sufficient to sustain the action. These representations were not merely expressions of opinion or estimates as to the value of "an ascer-

tained specific chattel *already existing*, and which the buyer has inspected," but, on the contrary, were representations of the existence of certain distinct facts, to wit, that there was a joint stock publishing company, the capital stock of which was $2,000, and that Mr. Stanland, who was understood to be a person of means and character, was a member of such company, all of which was known to the defendant to be untrue. That these facts were material, and that the plaintiff was thereby induced to invest his money in a mythical joint stock company for the benefit of the defendant, cannot well be doubted under the findings of fact below.

We do not understand that the plaintiff's claim for $300, secured by the mortgage of the cylinder press, is contested, and hence nothing need be said as to that.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.