12344

STATE v. BOLYN

(141 S. E., 165)

1. CRIMINAL LAW—REFUSING CONTINUANCE FOR ABSENT WITNESS HELD NOT ABUSE OF DISCRETION, WHERE DEFENDANT FAILED TO SUBPOENA WITNESS BECAUSE SUBPOENAED BY STATE.—Refusal of continuance to defendant for absence of material witness *held* not abuse of discretion, where defendant failed to have witness subpoenaed as defense witness on account of fact that witness was subpoenaed by State, since rule is well recognized that defendant must subpoena for himself persons whose testimony he desires as part of his defense. (Per Carter, J., and Watts, C. J.)

2. CRIMINAL LAW—DEFENDANT MUST SUBPOENA WITNESSES DESIRED BY HIM, THOUGH SUBPOENAED BY STATE.—Defendant, in criminal prosecution, should subpoena persons desired as witnesses for his defense, irrespective of whether they are also subpoenaed by State. (Per Carter, J., and Watts, C. J.)

3. CORPORATIONS—PERJURY—FAILURE OF INDICTMENT FOR MISREPRESENTING CORPORATION'S RESOURCES AND FOR PERJURY TO GIVE NAME OF OFFICIAL ADMINISTERING OATH, OR TO SHOW WHETHER DEFENDANT WAS PROSECUTED FOR STATUTORY PERJURY, HELD NOT PREJUDICIAL (CR. CODE 1922, § 134).—In prosecution under Cr. Code 1922, § 134, for making false representation as to resources of corporation and for perjury, failure of counts of indictment to give name of official who administered oath and failure of count for perjury to allege facts sufficient to enable defendant to know whether he was being prosecuted for common-law perjury or for violation of Section of Code *held* not prejudicial. (Per Carter, J., and Watts, C. J.)

4. INDICTMENT AND INFORMATION—REFUSAL TO REQUIRE STATE TO ELECT BETWEEN COUNTS CHARGING MISREPRESENTATION OF CORPORATION'S ASSETS AND PERJURY HELD NOT ERROR (CR. CODE 1922, § 134).—Action of Court in refusing to require State to elect upon which count in indictment it would proceed *held* not error, in prosecution under indictment containing counts for fraudulent misrepresentation as to resources of corporation, under Cr. Code 1922, § 134, and for perjury. (Per Carter, J., and Watts, C. J.)

5. CRIMINAL LAW—ADMISSION OF BANK'S RECORDS WITHOUT PROOF THAT DEFENDANT MADE ENTRIES CONTAINED THEREIN HELD ERROR, IN PROSECUTION OF BANK CASHIER FOR MISREPRESENTING BANK'S CON-

DITION (CR. CODE 1922, § 134).—In prosecution of director and cashier of bank for making false misrepresentation as to corporation's resources, under Cr. Code 1922, § 134, and for perjury, action of Court in admitting books and records of bank on testimony that defendant was in temporary charge of bank as representative *held* error, where it was not shown that he made entries in books and records, and it appeared that all of bank's employees may have participated in making them. (Per Carter, J., and Watts, C. J.)

6. CRIMINAL LAW—STATEMENTS IN DEFENDANT'S HANDWRITING PUBLISHED IN NEWSPAPER, NOT CONNECTED WITH STATEMENT REFERRED TO IN INDICTMENT, HELD ERRONEOUSLY ADMITTED IN PROSECUTION OF CASHIER FOR MISREPRESENTING BANK'S CONDITION (CR. CODE 1922, § 134).—In prosecution of bank cashier, under Cr. Code 1922, § 134, for making false misrepresentation of condition of bank and for perjury under indictment alleging that certain false statement was made, admission in evidence of statements in defendant's handwriting published in newspaper, which statements had no connection with statement alleged in indictment, because probated by different notary, *held* error, especially where there was no evidence to connect defendant with such statements, which were not shown to have been given by him to newspaper directly. (Per Carter, J., and Watts, C. J.)

7. INDICTMENT AND INFORMATION—DEFENDANT NEED ANSWER ONLY CHARGES CONTAINED IN INDICTMENT.—Defendant is not required to answer other charges than those contained in indictment. (Per Carter, J., and Watts, C. J.)

8. CRIMINAL LAW—EXCLUSION OF EVIDENCE ERRONEOUSLY ADMITTED WITHOUT INSTRUCTION TO DISREGARD HELD INSUFFICIENT TO CURE ERROR, THOUGH NO SPECIAL INSTRUCTION WAS REQUESTED (CR. CODE 1922, § 134).—Error in admitting statement published by newspaper in prosecution of bank cashier for misrepresenting bank's resources, under Cr. Code 1922, § 134, and for perjury *held* not cured by mere action of Court in granting motion to exclude such evidence, where Court failed to instruct jury not to consider statement, though no special instruction on subject was requested. (Per Carter, J., and Watts, C. J.)

9. CRIMINAL LAW—WHERE EVIDENCE WAS CONDITIONALLY ADMITTED, IF DEFENDANT'S FAILURE TO REQUEST INSTRUCTION TO JURY TO DISREGARD EVIDENCE DID NOT WAIVE RIGHT TO CLAIM MERE EXCLUSION WAS INSUFFICIENT.—Where evidence had been erroneously admitted subject to objection and future exclusion in case it should prove to be irrelevant, defendant's counsel was not required to request special instruction to jury to disregard it in addition to

moving for exclusion of evidence, and failure to request such instruction did not constitute waiver of his right to assert on appeal that error had not been cured. (Per Carter, J., and Watts, C. J.)

10. CORPORATIONS—PROOF OF FALSE MISREPRESENTATION IS ESSENTIAL TO CONVICTION UNDER STATUTE RELATIVE TO "FRAUDULENT MISREPRESENTATION" OF CORPORATION'S RESOURCES (CR. CODE 1922, § 134).— Under Cr. Code 1922, § 134, providing for punishment of officer or stockholder of corporation "who shall knowingly and willfully make, or cause to be made, any false misrepresentation as to either capital, property, or resources of the corporation," proof that defendant is stockholder or officer in corporation and that he made a "fraudulent misrepresentation" is essential to conviction; "fraudulent representation" consisting of a false representation, knowledge of falsity by person making it, ignorance of falsity by person to whom made, intention that it should be acted upon, and acting on it with damage (citing Words and Phrases, "Fraudulent Misrepresentation"). (Per CARTER, J., and Watts, C. J.)

11. CORPORATIONS—STATUTE RELATIVE TO FALSE MISREPRESENTATION OF CORPORATION'S RESOURCES MUST BE STRICTLY CONSTRUED (CR. CODE 1922, § 134).—Cr. Code 1922, § 134, relative to false misrepresentations of stockholders or officers concerning corporation's resources, must be strictly construed and each element of offense established in view of principle requiring strict construction of penal statutes. (Per Carter, J., and Watts, C. J.)

12. BANKS AND BANKING—IN PROSECUTION OF BANK CASHIER FOR FRAUDULENT MISREPRESENTATION OF BANK'S RESOURCES, EVIDENCE HELD INSUFFICIENT TO MAKE ISSUE FOR JURY (CR. CODE 1922, § 134).—In prosecution of bank cashier, under Cr. Code 1922, § 134, for fraudulent misrepresentation of bank's property and resources, evidence *held* insufficient to make issue for jury on account of absence of proof of false representation in that bank's books and records were improperly admitted in evidence. (Per Carter, J., and Watts, C. J.)

13. PERJURY—CONVICTION FOR PERJURY UNDER STATUTE IS SUSTAINED ON PROOF OF SWORN STATEMENT AND THAT STATEMENT WAS FALSE REPRESENTATION (CR. CODE 1922, § 335).—In order to support conviction, under Cr. Code 1922, § 335, relative to perjury, it is only necessary to prove that defendant, under oath, swore to statement of facts alleged in the indictment, and that the statement sworn to was a false representation. (Per Carter, J., and Watts, C. J.)

14. PERJURY—EVIDENCE HELD INSUFFICIENT TO MAKE ISSUE FOR JURY OF GUILT OF BANK CASHIER ALLEGED TO HAVE MADE FALSE STATE-

MENT OF BANK'S RESOURCES (CR. CODE 1922, § 335.—In prosecution of bank cashier under Cr. Code 1922, § 335, for willfully and knowingly taking false oath to statement of bank's condition, evidence *held* insufficient to make issue of defendant's guilt for jury, in view of failure to prove that defendant had failed to make any "false representation." (Per Carter, J., and Watts, C. J.)

11. CORPORATIONS—STATUTE RELATIVE TO FALSE MISREPRESENTATION OF MISREPRESENTING BANK'S RESOURCES AND FOR PERJURY HELD NOT SUSTAINED (CR. CODE 1922, §§ 134, 335).—Conviction of cashier of bank for misrepresenting bank's resources, under Cr. Code 1922, § 134, and for perjury, under Section 335, *held* not sustained.

Before S. T. LANHAM, Special Judge, Horry, June, 1926. Reversed.

S. P. Bolyn was convicted of making false representations as to the capital of a corporation and of perjury, and he appeals.

The indictment and appellant's exceptions were as follows:

## INDICTMENT

The State of South Carolina, County of Marion. At a Court of general sessions, begun and holden in and for the County of Marion, in the State of South Carolina, at Marion, in the County and State aforesaid, on the 8th day of June, in the year of our Lord, 1925.

I. The jurors of and for the County aforesaid, in the State aforesaid, upon their oath, present that S. P. Bolyn on the 15th day of October, 1924, at Marion, in the County and State aforesaid, was a director and cashier of the Planters' Bank, a banking corporation organized and established and then and there doing business as and under the name of the Planters' Bank under and by virtue of the laws of the State of South Carolina, the said S. P. Bolyn being then and there actively engaged in the management of the business and affairs of said bank by virtue of his official relation thereto as director and cashier; that the said S. P. Bolyn as director and cashier as aforesaid, at the time and

place aforesaid, unlawfully, knowingly, willfully, and with intent to deceive, did make and cause to be made certain fraudulent misrepresentations as to the property and resources of said bank in this, that the overdrafts thereof amounted only to $266.69, whereas, in truth and in fact, said overdrafts aggregated $5,608.53, and, in this, that no officer or director of said bank was overdrawn, whereas, in truth and in fact, the account of H. A. Lewis, "personal," was overdrawn $18, H. A. Lewis (milk account) was overdrawn $5.05, S. P. Bolyn was overdrawn $200.75, Z. G. Smith was overdrawn $593.31, said persons being officers of said bank, all of which the said S. P. Bolyn then and there well knew; and so the said S. P. Bolyn, in the manner and form aforesaid, did knowingly, wrongfully, and willfully make and cause to be made said fraudulent misrepresentation, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State.

II. And the jurors, upon their oath aforesaid, do further present that S. P. Bolyn on the 15th day of October, 1924, at Marion, in the County and State aforesaid, was a director and cashier of the Planters' Bank, a banking corporation theretofore organized and established and then and there in operation and doing business as and under the name of the Planters' Bank under and by virtue of the laws of the State of South Carolina, the said S. P. Bolyn, being then and there actively engaged in the management of the business and affairs of said bank by virtue of his official relation thereto as director and cashier as aforesaid, at the time and place aforesaid, did willfully, unlawfully, and knowingly commit perjury in this, that the said S. P. Bolyn, being then and there sworn, did say on his corporal oath that the overdrafts of the Planters' Bank amounted to only $266.69, whereas, in truth and in fact, said overdrafts aggregated $5,608.33; that no officer or director of said bank was overdrawn, whereas, in truth and in fact, the account of H. A.

Lewis, "personal," was overdrawn $18, H. A. Lewis (milk account) was overdrawn $5.05, S. P. Bolyn was overdrawn $200.75, Z. G. Smith was overdrawn $593.31, said persons being officers of said bank, the said S. P. Bolyn well knowing said statements to be false; and so the said S. P. Bolyn, in the manner and form aforesaid, did swear falsely in taking an oath required by law and administered by a person directed and permitted by law to administer the same, and thereby committed perjury, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State.

## EXCEPTIONS

(1) It is respectfully submitted that the presiding Judge erred in ordering the case to trial, when it appeared that Mr. F. H. Daniels, former assistant state bank examiner, who had had the bank in which the defendant was employed under his supervision for several months prior to its closing, and had been called into conference immediately preceding the closing of the said bank, a state's officer and under subpœna as a state's witness, to appear at the Court for the trial of this case, but who was absent when the case was called for trial, and in so ordering the case to trial under these circumstances it is respectfully submitted that the trial Judge abused his discretion to the immense prejudice of the defendant.

(2) It is respectfully submitted that the trial Judge erred is overruling the motion to quash and the demurrer to the indictment because the said indictment in both counts was so vague, uncertain, indefinite, and incomplete as completely to fail to apprise the defendant of the exact nature of the offense with which he was charged.

(3) It is respectfully submitted that the trial Judge erred in overruling the motion to quash and demurrer as to the first count, because there was no allegation contained there-

in to show that the matter therein set forth and charged to be false was material to the conduct of the business, or that it related to either the capital, property or resources of the bank, or that it had been made to some specified person for the purpose of inducing action upon it, or to a person having an interest in the corporation or a right to obtain the information, or that it had been fraudulently made.

(4) It is respectfully submitted that the trial Judge erred in overruling the motion to quash and the demurrer as to the first count of the indictment, because there were no allegations to show (a) to whom the alleged representation was made; (b) ignorance of its falsity by the person to whom it was made; (c) that it was made to induce action upon it; (d) that there was action upon it with damage.

(5) It is respectfully submitted that the trial Judge erred in overruling the motion to quash and the demurrer as to the second count of the indictment, because there is no allegation therein to show (a) by or before whom he was sworn; (b) in what manner he was sworn; (c) that the matter with which he was charged with swearing was material or any other fact as distinguished from a conclusion of law that would enable the defendant to prepare himself to meet the charge against him.

(6) It is respectfully submitted that the trial Judge erred in overruling the motion to require the State to elect upon which count of the indictment it would try the defendant, where it appeared in the indictment that identically the same transaction would be relied upon as constituting a violation of Section 134 of the Criminal Code and also willful perjury.

(7) It is respectfully submitted that the Court erred in admitting in evidence the books and records of the bank, consisting of Exhibits C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, and 1, 2, 3, 4, 5, and 6, over the objection of the defendant, be-

cause of the total absence of evidence tending to show that such records had been made by the defendant.

(8) It is respectfully submitted that his Honor erred in permitting the witness La Roque and the witness Johnson to be interrogated by state's counsel with respect to the publication of a statement of the condition of the bank in a newspaper to wit, the Marion *Star,* under date October 22, 1924, in the presence of the jury, the effect of which was to the prejudice of the defendant, there being no evidence to show that the publication was made by the defendant or at his instance or request, and in admitting the paper in evidence.

(9) It is respectfully submitted that his Honor erred in permitting the witness Johnson to be interrogated by state's counsel with respect to the publication of a statement of the condition of the bank in a newspaper, to wit, the Marion *Star,* under date October 6, 1924, in the presence of the jury, the effect of which was to the prejudice of the defendant, the said evidence being irrelevant, incompetent, and inadmissible, there being no evidence tending to show that the publication was made by the defendant or at his instance or request, and in admitting the paper in evidence.

(10) It is respectfully submitted that his Honor erred in admitting in evidence the Marion *Star* under date of October 6, and 22, 1924, with the admonition that the defendant must be shown to have published or caused the same to be published, and in subsequently striking it out of the record, but failing to take adequate precaution by appropriate statement to the jury of the intent, purpose, and effect of such ruling.

(11) It is respectfully submitted that his Honor erred in permitting the published statement of October 6th to remain in the record, because the same was not responsive to any charge contained in the indictment, was irrelevant and prejudicial to the defendant.

(12) It is respectfully submitted that his Honor erred in failing to direct a verdict of "Not Guilty" upon the whole case upon motion duly made at the conclusion of the state's evidence, because there was no evidence under the first count to show (a) a false representation; (b) knowledge of the defendant of its falsity; (c) to whom it was made; (d) ignorance of its falsity by the person, if any, to whom it was made; (e) intention that it should be acted upon; and (f) action upon it with damage.

(13) It is respectfully submitted that his Honor erred in failing to direct a verdict of "Not Guilty" upon the whole case, on motion duly made at the conclusion of the state's evidence, because there was no testimony under the second count to show that the defendant actually took an oath upon which the charge of perjury might be assigned, and, on the contrary, the evidence showing affirmatively that the defendant simply tendered a paper to the notary public already signed by the defendant when the notary public signed the same at the request of the defendant to probate the paper.

(14) It is respectfully submitted that his Honor erred in refusing the defendant's fifth request, which contained a fair and correct principle of law, and which was submitted in the following words:

"If you conclude that he made an honest mistake, or that the method of carrying overdrafts on the books and records of the bank was in accordance with the established and approved banking methods, then, of course, you would find the defendant not guilty on both counts."

(15) It is respectfully submitted that his Honor erred in not charging the jury that "fraudulent misrepresentation," as used in Section 134 of the Criminal Code embraced five elements, the absence of any one of which would entitle the defendant to an acquittal, to wit: First, a false representation; second, knowledge by the person who made it of its falsity; third, ignorance of its falsity by the person to whom

it was made; fourth, intention that it should be acted upon; and, fifth, action upon it with damages.

(16) It is respectfully submitted that his Honor erred in failing to charge the defendant's sixth and seventh requests as presented, because they embodied sound principles of law and were presented in the following words:

"VI. Before you can find him guilty on the second count, the State is required to prove beyond a reasonable doubt that (a) defendant was sworn; (b) that, being sworn, he swore falsely; and (c) that the matter to which he swore was material.

"VII. These are questions of fact: (a) Was he sworn? You heard the evidence. (b) Did he swear fasely? You heard the evidence. (c) Was the matter to which he swore material? You heard the evidence."

(17) It is respectfully submitted that his Honor erred in refusing defendant's motion for a new trial, made generally upon the record and specifically as to the first count:

(a) That it appeared from all of the evidence in the case, first, that an overdraft was neither a part of the capital, property, or resources of the bank; second, that it was testified to by the state's witness La Roque, without contradiction, the difference in overdrafts were shown as liability to depositors; third, that it appeared from the state's witness La Roque, uncontradicted and corroborated by the defendant's witness Watson, a state bank examiner, that the method employed by this bank in carrying these items was in accordance with the general and approved custom among banks of this size and class; fourth, that by including approximately $5,000 in deposit liabilities instead of as overdrafts was not material to the bank examining department familiar with the method of handling such transactions, and there was no competent evidence before the Court to show that the statement had been made to any other person or

that it had been acted upon; fifth, that the only reasonable inference to be drawn from all the testimony was that a number of the depositors alleged to have been overdrawn had more than one account or had deposited collateral, and that the apparent overdraft was not such in fact; and, sixth, that Lewis and Johnson posted the individual ledgers from which totals were taken by them daily, submitted to the defendant, who, in reliance upon their correctness, entered the figures on the cash book and journal of the bank, and in answering the call for a statement showing the condition of the bank on the date in question he simply copied the figures upon the form furnished and signed the same.

(b) That there was no evidence to show that the statement made by the defendant was made with knowledge of its falsity if, in fact, it was incorrect; second, that there was no evidence to show that he made it with intent to defraud; third, that the bank examiner was deceived, misled, or defrauded; fifth, that the bank examiner relied upon it; sixth, that he acted upon it to his hurt, damage, or injury, and in so charging the jury without request that the absence of any one of these elements would require a verdict of not guilty at their hands.

(18) It is respectfully submitted that his Honor erred in refusing defendant's motion for a new trial, made generally upon the record, and specifically as to the second count because there was no evidence of any appeal to God or any Superior Sanction for the truth of the declaration made by the defendant, nor was there any corporal act or verbal declaration proved to indicate that the defendant was conscious of the difference between a mere asseveration and a solemn corporal oath, and on the contrary all of the evidence on this point was by ground the notary public, who testified that the defendant, having already signed the paper, presented it to him with the request that he probate it,

which he did as an attestation of the genineness of the signature."

*Messrs. Philip H. Arrowsmith and Frank A. Thompson,* for appellant, cite: *"Fraud":* 3 Words and Phrases, 2960; 20 Cyc., 1; 9 Rich., 300; 1 Strob., 220; 10 Rich., 311; 61 S. C., 190; 3 Brev., 31; 26 S. C., 275; 23 Cent. Dig., 1638-1836; 12 R. C. L., 240. *Statutes strictly construed:* 3 Hill, 96; 2 Bail., 334; 2 Spears, 129; 16 S. C., 187; 96 S. C., 5; 86 S. E., 1057. *Necessary that fraud be distinctly alleged in the pleadings. In absence of such allegations, evidence of fraud not received at trial:* 58 S. C., 59; 80 S. C., 305; 65 S. C., 154, 185; 78 S. C., 486; 99 S. C., 396. *Code Sections cited:* Sec. 256, 335, 332, 260, Cr. Code; Sec. 3971, 3988, 3989, 4295, Civ. Code. *Error in not requiring State to elect upon which count in the indictment it would proceed to trial:* 14 Rich., 169; 5 S. C., 434; 54 S. C., 178; 55 S. C., 353. *Admissibility as evidence of book entries:* 1 Whart. Cr. Ev., 476; 1 Greenleaf (16th Ed.), 174, Sec. 115, 116, 117; 17 Cyc., 388, 391, 395; 122 S. C., 43; 128 S. C., 354. *Where evidence admitted over objection and later stricken out, reversal proper:* 117 S. C., 44. *What constitutes an oath:* 3 Strob., 147; 30 Cyc., 1416; 40 Fed., 151; 5 L. R. A., 816; 40 Am. Rep., 525; Ann. Cas., 1919-B, 595; 112 S. E., 827; 124 S. C., 514; 125 S. C., 22; 120 S. E., 576; 124 S. E., 87; 129 S. C., 478. *Perjury:* 28 S. C., 18.

*Messrs. J. M. Daniel, Attorney General, Cordie Page, Assistant Attorney General, Walter F. Stackhouse and Frank A. Miller,* for respondents, cite: *Motions for continuance:* Circuit Court Rule 27; 66 S. C., 449; 107 S. C., 411; 78 S. C., 264. *Code Sections cited:* Secs. 134, 154, 335, Cr. Code; Sec. 89, Code Cr. Proc. *Sufficiency of indictment:* 120 S. C., 156; Sec. 83, Code Cr. Proc. *Election of count upon which defendant should be tried:* 38 S. C., 353; 24 S. C., 142; 18 S. C., 149; 132 S. C., 236;

86 S. C., 17. *Proof of oath:* 120 S. C., 154. *Where two or more counts in an indictment relate to one and the same transaction, a general verdict is sufficient, such a verdict will be referred to the good counts and sustained unless the contrary appears:* 14 R. C. L., 211.

January 4, 1928.

The opinion of the Court was delivered by Mr. Justice Carter.

The defendant, S. P. Bolyn, who was a director and cashier of the Planters' Bank of Marion, S. C., at the time the said bank closed its doors for business, was charged under an indictment, containing two counts, with the violation of Section 134 of the Criminal Code in the first count, and willful perjury in the second count. The grand jury of Marion County returned a true bill on the indictment June 8, 1925, whereupon the defendant, by his counsel, moved to change the venue of the case for unwarranted prejudice against the defendant created through the closing of this bank. The motion was granted, and the case was transferred from Marion County to Horry County. On June 9, 1925, the case came on for a hearing before Hon. Sam T. Lanham, Special Judge, presiding in the Court of General Sessions for Horry County. When the case was called, the defendant moved for a continuance upon the grounds hereinafter referred to, which motion was refused. The defendant was then placed in the dock and subjected to formal arraignment. At the conclusion of the arraignment, the defendant moved to quash the indictment as to both counts, and also demurred to the indictment, which motions the special presiding Judge overruled and ordered the arraignment to proceed. The defendant then, through his counsel, moved the Court to require the State to elect upon which count it would proceed. This motion his Honor also overruled and ordered a jury impaneled. The evidence offered by the State was taken subject to objection, from time to time,

duly noted. At the conclusion of the state's case, the defendant, through his counsel, moved for a direction of a verdict. The motion was refused, whereupon the defendant introduced his testimony, and, at the conclusion of which, the defendant duly submitted certain requests to charge. Upon the case being submitted to the jury, the jury returned a verdict of guilty. A motion for a new trial was made on behalf of the defendant, but the motion was refused and the defendant was sentenced to pay a fine of $1,000 and serve a period of 6 months in the State Penitentiary. The defendant has appealed to this Court, imputing error to his Honor the presiding Judge in the particulars set forth under his exceptions.

Under the first exception, the defendant alleges that 1, 2 his Honor the presiding Judge erred in ordering the case to trial, the defendant having moved for a continuance of the case until the following morning upon the ground that the assistant state bank examiner, Mr. Frank H. Daniel, who had the bank under his supervision for several months before and immediately preceding the closing of the same, had been subpœnaed as a witness for the State, and for that reason had not been subpœnaed by the defense, stating to the Court that counsel for the defense had just learned that Mr. Daniel was not present, and that Mr. Daniel was a most vital, material witness for the defense. The record bears out this statement of facts. Counsel for the State stated to the Court that Mr. Daniel had been subpœnaed by the State, but that he had excused Mr. Daniel from attending Court in order that Mr. Daniel might go to New York to fill an engagement, stating that he did not know that counsel for the defense desired Mr. Daniel as a witness, and stated further that the State had the documents and another official present. While the Court fully appreciates the "consternation" experienced by the defendant's counsel in having to go to trial without the presence of this

witness, and also appreciates the great disadvantage to which the defendant probably was placed, the witness having not been subpœnaed by the defense to testify for and on behalf of the defense, this Court cannot hold that the presiding Judge abused his discretion in refusing defendant's motion. To so hold would establish a dangerous precedent which would likely lead to great harm and abuse. The well-recognized rule required the defendant to subpœna the witness for the defense. Therefore this exception is overruled.

The second, third, fourth, and fifth exceptions impute error to his Honor the presiding Judge in refusing defendant's motion to quash the indictment and in overruling the demurrer to the indictment. While we are of the opinion that the indictment should have contained additional allegations—for instance, both counts should have given the name of the official who administered the oath the defendant is alleged to have taken, and the second count, in addition, should have alleged facts sufficient to enable the defendant to know whether he was to be tried for common-law perjury or for the violation of some Section of the Code—a careful reading of the record convinces us that the defendant was not prejudiced by the absence of this information in the indictment. Therefore these exceptions are overruled.

The sixth exception, which imputes error to his Honor in overruling defendant's motion to require the State to elect upon which count in the indictment it would proceed to trial, cannot be sustained under the decisions of this Court, and defendant's counsel properly does not press the exception further. The same is therefore overruled. See the following decisions of this Court: *State v. Nelson,* 14 Rich., 169; 94 Am. Dec., 130; *State v. Scott,* 15 S. C., 434; *State v. Sheppard,* 54 S. C., 178; 32 S. E., 146; *State v. Bouknight,* 55 S. C., 353; 33 S. E., 451; 74 Am. St. Rep., 751; *State v. Woodard,* 38 S. C., 353; 17 S. E., 135; *State v. Hutchings,* 24 S. C., 142; *State v.*

*Smith,* 18 S. C., 149; *State v. Sharpe,* 132 S. C., 236; 128
S. E., 722; *State v. Jones,* 86 S. C., 17; 67 S. E., 160.

The seventh exception imputes error to the presiding
Judge "in admitting in evidence the books and records
of the bank, consisting of Exhibits C, D, E, F, G, H,
I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, and
Z, and 1, 2, 3, 4, 5, and 6, over objection of defendant,
because of the total absence of evidence tending to show that
such records had been made by the defendant." An ex-
amination of the transcript of record discloses that, while
these books and records admitted in evidence over the ob-
jection of the defendant purported to constitute the books
and records of the bank, there is no proof that the defendant
made the entries therein contained. The witness O. K. La
Roque, a witness for the State, testified that he had been
officially connected with this bank as liquidating agent for
the receiver, the state bank examiner, since January, 1925,
and was at the time of the trial still occupying that posi-
tion, and that, as a representative of the bank examiner of
this State, he had custody of the documents of the Planters'
Bank in his possession. This witness further testified that
the defendant was in temporary charge of the bank as a
representative, he assumed, of the state bank examiner, and
turned these books and records over to him, the witness,
Mr. La Roque. On this showing, the books and records
were admitted in evidence over the objection of the defend-
ant. There was no evidence that the defendant made the
entries in these books and other records, and no evidence
that he was in any way responsible for the entries made
therein. On the other hand, the testimony tended to show
that the entries were made by other employees of the bank.
Mr. H. A. Lewis was vice president in charge of the bank,
and the defendant was cashier under him; J. O. Lewis was
assistant cashier, and there were also other employees who
worked in the. bank. The witness did not know who made

the entries in these books and records, but was under the impression that all of the employees in the bank might have worked on the books. In our opinion, the showing was insufficient for admission of the books and records in evidence and that his Honor erred in admitting them in evidence. Therefore this exception is sustained. In support of this position, see the following decisions of this Court: *Tunno v. Rogers,* 1 Bay, 480; *Rawleigh v. Thompson,* 122 S. C., 43; 114 S. E., 702; *Rhodus v. Dukes,* 128 S. C., 354; 122 S. E., 872; *Grocery Co. v. Dannelly,* 93 S. C., 580; 77 S. E., 706; Ann. Cas., 1914-D, 489; *Supply Co. v. Jones,* 87 S. C., 426; 69 S. E., 881. Also see 17 Cyc., 293, and 388.

Exceptions 8, 9, 10, and 11 "relate to the examination of witnesses with respect to the introduction in evidence of and the failure to strike out and properly instruct the jury with respect to the publication of the bank's statements in the Marion *Star* on October 6 and October 22, 1924."

On the testimony of Mr. O. K. La Roque, a witness for the State, that he knew the signature of the defendant, a statement purporting to have been signed by defendant and directed to the state bank examiner, and purporting to have been probated by E. R. Brown, notary public, October 15, 1924, was admitted in evidence. The state next introduced in evidence the books and records referred to under the consideration of exception 7., there being no testimony offered tending to show that the defendant made the entries in these books and records, nor was there any evidence that the defendant was responsible for the entries contained therein.

Following this, the state examiner witnesses with reference to the publication by the defendant of statements published in the Marion *Star,* probated by R. N. Johnson, notary public. The following appears in the record:

Mr. P. W. Johnson, a witness for the state and examined by state's counsel, testified as follows:

"Q. Mr. Johnson, are you the editor of this paper which is marked for identification? A. I am, sir.

"Q. And you were at the date of that issue? A. I was.

"Q. What is that issue, the date? A. October 22, 1924.

"Q. Does that issue carry a statement of the Planters' Bank? A. Yes, sir.

"Q. Is that it at the bottom of that page? A. Yes, sir. (Offered in evidence.)

"Mr. Arrowsmith: There is no evidence that it came from this defendant.

"Q. Do you know why that statement was published? A. That statement was published pursuant to a paper supplied to me by the Planters' Bank.

"Mr. Arrowsmith: The bank is not on trial.

"The Court: Frankly, gentlemen, I think that is the nicest point that has been raised so far on the trial.

"Q. Do you know or not that Mr. Bolyn was in active management and control of that bank or not? A. I do.

"Q. Will you state whether or not Mr. Bolyn lived in that very community where that paper circulated? A. Yes.

"Q. Did you have dealings with the bank yourself? A. Sometimes; yes, sir.

"Q. At or about this time will you state whether or not you dealt with Mr. Bolyn, speaking for the bank. A. Well, not frequently, but from time to time.

"Q. Do you recall whether you procured that or a similar statement from Mr. Bolyn himself? A. I have procured statements from Mr. Bolyn—I cannot swear that I obtained this one from him.

"Q. But similar statements? A. Yes, sir.

"Q. How often, will you state? A. I cannot say how often from Mr. Bolyn, Mr. Miller. The bank usually published a statement about four times a year, and I have had Mr. Bolyn to bring those statements to my office and there

have been times when other employees of the bank would bring them in.

"Q. Now, Mr. Johnson, will you state whether or not Mr. Bolyn ever controverted the statement contained in that paper? A. Not to me, sir.

"The Court: I want to hear Mr. Arrowsmith.

"Mr. Arrowsmith: I have nothing further, your Honor.

"The Court: All right. The objection is overruled, and the paper will go in evidence."

Further on, the witness P. W. Johnson testified as follows, on examination by counsel for the State:

"Q. I hand you what purports to be a statement of the condition of the Planters' Bank of Marion and ask you if you know by whom that statement was made? A. This statement is made in the handwriting of S. P. Bolyn, signed by him.

"Q. Sworn to before whom? A. Mr. R. M. Johnson, notary public.

"Q. Do you know his signature? A. I do.

"Q. Was that statement formerly in your possession? A. This is a statement which was placed in my hands for publication in my paper, and which appeared in my paper on the 22d of October, 1924, and to which I have sworn on the back.

"The Court: Do you recall my ruling at the morning hour that this would have to be connected with the defendant? A. I am speaking of the publication in the paper.

"Q. Did you get that from Mr. Bolyn? A. I could not say. I do not recall.

"Q. You say that is his handwriting? A. Yes, sir; and those figures published in my paper were taken from this statement by me, sworn to by me and published just as they appeared on that. (Paper offered in evidence. Objected to.)

"The Court: You are going to have to show, or else I am going to rule out, the newspaper and that feature of the

case that this defendant sent the statement to the newspaper for publication.

"Q. May I ask you who paid for the publication of this notice? A. The Planters' Bank.

"Q. Do you know whose check? A. I do not.

"Q. Or what representative of the bank paid for it? A. I do not.

"Q. Can you now recall whether or not S. P. Bolyn sent this particular statement? A. It is impossible for me to say.

"Q. Your testimony was this morning that he had, on occasions, personally brought them to your office. A. Yes, sir; at times he has. (Paper offered in evidence for the purpose of showing publication of *misinformation* about the affairs of the bank, in violation of law.)

"The Court: The defendant is brought here to answer criminally, and all evidence relating to publications in newspapers will be excluded unless it is shown that it was published at his direction or his instance. Unless it is connected up with him, as I announced, I will exclude it and I so instruct the jury.

"Mr. Miller: I offer this as another publication of *misinformation* about the affairs of the bank.

"The Court: What date is that?

"Mr. Miller: Referring to the Planters' Bank, October 6, 1924. (Objected to.)

"The Court: I am going to admit it with the reservation already announced in my ruling with reference to the newspaper publication. Up to this date it goes in, but I think counsel understands the ruling. I endeavored to make myself clear on that point. (Paper marked Exhibit No. 9.)"

Cross-examination by Mr. Arrowsmith:

"Q. Mr. Johnson, I have not had the privilege of seeing the paper that was last handed to you; is that a statement identical with that published in the paper which you identified

this morning? A. Yes, sir; these figures were supplied me by the bank.

"Q. And that is identically the same as it appeared in the paper? A. Well, I have not checked it.

"Q. The point I am trying to get at—look at the newspaper and see if the statement published therein appears to have been probated by R. N. Johnson. A. This statement in the newspaper is probated by R. N. Johnson, notary public.

"Q. You frequently called at the bank and got statements, did you not? A. I do not recall ever going for them. We never know when they are coming in, Mr. Arrowsmith.

"Q. And other people connected with the bank carried statements to your office, didn't they? A. I have had them by messenger and by mail.

"Q. Yes, sir; it is hardly probable that in the fall of the year an officer of the bank would make a personal delivery of an article of this kind, is it? A. I could not say. They are never too busy to walk a half block. If he had it in his hand and his clerk was busy, I imagine he would bring it around.

"Q. Sometimes they came by mail? A. Yes, sir.

"Q. So, therefore, there were various avenues to get the information to you? A. Yes, sir."

Then counsel for the defendant made a motion, and the following transpired:

"Mr. Arrowsmith: If your Honor pleases, I move to strike out at this time the two exhibits offered by the State, purporting to have been probated by R. N. Johnson.

"The Court: I would not wish to rule on that until the State finishes its case. You remember my ruling. If it is renewed at the close of the State's case, I will rule on it.

"Mr. Miller: We have shown that those statements were in the handwriting of Mr. Bolyn.

"The Court: Yes; but what you are endeavoring to prove is that the publication was at his instance and direction.

"Mr. Miller: I ask that those exhibits remain in the record as being some evidence of the publication in his handwriting, over his own signature.

"The Court: I now grant Mr. Arrowsmith's motion to exclude from the evidence the issue of the Marion *Star,* dated October 22, 1924, and the publication therein, after hearing the statement of counsel for the State that they could not comply with the ruling by showing that the publication was made at the instance of the defendant. I will now hear you on the other proposition. (Argument *pro* and *con.*)

"The Court: I am going to let it go to the jury; it is admitted in evidence."

The exhibit which his Honor refused to strike from the record was the statement published in the Marion *Star,* dated October 6, 1924. The state's witnesses had already testified that Mr. H. A. Lewis was vice president and in charge of the bank in question, and that the defendant worked under Mr. Lewis, and further, there were other employees who did an active work in the bank. Evidently, there were many sources from which the Marion *Star* could have procured these statements which were published in the Marion *Star,* but, be that as it may, there is absolutely no evidence to connect the defendant with the publication of these alleged statements. Both of these statements purport to have been probated by R. N. Johnson, whereas the statement alleged in the indictment, as testified to by the State's witnesses, was probated by E. R. Brown, a notary public. In fact, as far as we have been able to ascertain from the transcript of the record, these statements probated by R. N. Johnson and published in the Marion *Star* have no connection with the charges alleged in the indictment against the defendant. As stated by State's counsel, it seems

to have been the purpose of the State to show the "publication of misinformation about the affairs of the bank in violation of law." Counsel for the State said further, "I offer this as another publication of misinformation about the affairs of the bank." Such testimony and such a statement we consider highly prejudicial to the defendant. It was incumbent upon the defendant to answer the charges contained in the indictment and no other. It is true that his Honor granted a motion to exclude from the evidence the issue of the Marion *Star* dated October 22, 1924, and the publication therein. In doing so, his Honor failed to instruct the jury not to consider anything in connection with this statement and not to consider any of the testimony in connection therewith. It will be observed, also, that the issue of October 6, 1924, and the publication therein contained were not excluded. The error that had been committed by permitting the testimony and admitting in evidence the statement of October 22d could not be removed by his Honor simply stating that he would grant now Mr. Arrowsmith's motion to exclude from the evidence this issue of the Marion *Star* dated October 22, 1924, and the publication therein. See *Templeton v. C. & C. R. R.,* 117 S. C., 44; 108 S. E., 363. It is difficult at best to correct an error made during a trial in the admission of testimony in any case, and especially is this true when the matter involved is of the nature under consideration in this case. Special care should be taken in such cases to instruct the jury not to consider the matters excluded so that the jury will clearly understand its duty in such instances. Counsel for respondent takes the position that it was incumbent upon defendant's counsel to request special instruction if not satisfied with the instruction given by his Honor. In matters of this nature, we do not think counsel should be called upon to make such requests, and defendant should not lose his rights of appeal because of defendant's counsel having not presented

a request as to this. We think that his Honor was in error in the particulars set forth under these exceptions 8, 9, 10, and 11, and the exceptions are sustained.

The twelfth and thirteenth exceptions impute error to his Honor the presiding Judge in refusing to grant defendant's motion for a direction of a verdict of not guilty. In passing upon these exceptions, it is necessary to consider the requisite ingredients of the crime charged under each count in the indictment. The first count admittedly charges a violation of Section 134 of the Criminal Code of 1922, which reads as follows:

"Any officer or stockholder of any corporation who shall knowingly and willfully make, or cause to be made, any fraudulent misrepresentation as to either capital, property or resources of the corporation, shall be held guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not more than two thousand dollars, or by imprisonment for not longer than two years, or both, at the discretion of the Court."

In order for the defendant to be convicted under this Section of the Code, it must be proved that he, as a stockholder or an officer of the Planters' Bank of Marion, made or caused to be made a "fraudulent misrepresentation" as to the capital, property, or resources of this bank. What constitues a "fraudulent misrepresentation?" We quote briefly from some of the standard works as to what constitutes fraudulent misrepresentation. In 2 Bouvier's Dictionary, Rawles Revision, 423, we find the following statements of the law on this subject:

"The statement made by a party to a contract that a thing relating to it is in fact in a particular way when he knows it is not so" is a misrepresentation. "The misrepresentation must be both false and fraudulent in order to make the party making it responsible to the other for damages."

"Misrepresentation as to a material part of the consideration will avoid an executory contract."

"A misrepresentation, to constitute fraud, must be contrary to fact; the party making it must know it to be so."

"To be material, the misrepresentation must be in respect to an ascertainable fact, as distinguished from a mere matter of opinion, judgment, probability, or expectation, if it is vague and indefinite in its nature and terms or is merely a loose, conjectural, or exaggerated statement, it is not a material misrepresentation."

"Mere honest expression of opinion will not, as a rule, be regarded as fraud either as a basis for an action of deceit, or a ground for setting aside a contract, although the opinion may prove to be erroneous."

"One who makes a false statement, which he believes to be true, incurs no liability; if the belief is honest, it makes no difference what their grounds are."

In 26 Corpus Juris, 1062, we find the following statement of the law as to fraud and the elements and essentials:

"It may be stated generally that the elements of actionable fraud consist of (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted upon by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury."

20 Cyc., 13, states the rule in the above language:

In the case of *Raser v. Moomaw,* 78 Wash., 653; 139 P., 622; 51 L. R. A. (N. S.), 709, the Court states that the essential elements necessary to constitute actionable fraud and deceit are as follows: (1) That the defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it reck

lessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the plaintiff; (5) that the plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

In 12 R. C. L., 240, the rule is stated thus:

"The essential elements required to sustain an action for deceit are that the representation was made as a statement of fact which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with the intent to deceive and for the purpose of inducing the other party to act upon it; and that he did, in fact, rely on it and was induced thereby to act to his injury or damage. All of these ingredients must be found to exist, and the absence of any one of them is fatal to a recovery."

In 3 Words and Phrases, 2960, we find the following:

"It is said in Bigelow, Frauds, 466, that a fraudulent misrepresentation is made up of five elements: (1) A false representation; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) intention that it should be acted upon; (5) acting upon it with damage."

We also call attention to the following decisions of this Court which are in accord with the above statement of the law: *Campbell v. Kinloch,* 9 Rich., 300; *Chisolm v. Gadsden,* 1 Strob., 220; 47 Am. Dec., 550; *Holmes v. Caldwell,* 10 Rich., 311; *Poag v. Charlotte Oil Mill,* 61 S. C., 190; 39 S. E., 345; *Monro v. Gairdner,* 3 Brev., 31; 5 Am. Dec., 531; *Lebby v. Ahrens,* 26 S. C., 275; 2 S. E., 387.

It being a universally recognized principle that penal Statutes must be strictly construed, Section 134 of the Criminal Code, on which the first count in the indictment is based, must be construed strictly, and, in the absence of a Statute placing a construction on the words

"fraudulent misrepresentation," in passing upon defendant's exceptions, these words must be construed in the light of the salutary rules quoted in the authorities cited above. If a defendant is entitled to the application of these principles in determining property rights, then, surely a defendant whose liberty is at issue is entitled to no lesser rights. Adopting the rule quoted under Words and Phrases, *supra,* we have the following:

"Fraudulent misrepresentation is made up of five elements: (1) A false representation; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) intention that it should be acted upon; (5) acting upon it with damage."

Considering the first necessary element—"a false representation"—we find no proof to establish the same. We have examined the transcript of record carefully, and the only testimony tending to establish this element was given by the witness, Mr. O. K. La Roque. The testimony given by Mr. La Roque on this point was acquired from books and records improperly admitted in evidence, which we have already discussed under exception 7. With this testimony out of the record, which we think should have been excluded, there is no evidence to prove that the defendant made "a false representation," which is the first element to be proved in order for the defendant to be convicted under the first count. Therefore it follows that a verdict should have been directed for the defendant under the first count in the indictment, it being necessary to establish each element in order for the defendant to be convicted.

As to the other four elements necessary to be established before there could be a conviction under the first count, it is only necessary to state that, there being no proof that the defendant made "a false representation" as shown above, it follows that these four additional elements have not been established.

For instance, take the second element, to wit, "knowledge by the person who made it of its falsity." If no "false representation" was made, the second element does not exist. It is not established. So it is with the three remaining elements. In our opinion, the defendant was clearly entitled to the diréction of a verdict under the first count of the indictment.

The thirteenth exception imputes error to his Honor the special presiding Judge in refusing defendant's motion to direct a verdict as to the second count in the indictment. While there is no allegation contained in the indictment as to whether it was intended to charge the defendant with common-law perjury or the violation of a Section of the Code, it appears from the transcript of record that the defendant was tried under Section 335 of the Criminal Code, which reads as follows:

"Whoever shall, willfully and knowingly, swear falsely in taking any oath required by law, and administered by any person directed or permitted by law to administer such oath, shall be deemed guilty of perjury, and, on conviction, incur the pains and penalties of that offense."

Under the authority of the case of *State v. Byrd*, 28 13, 15 S. C., 18; 4 S. E., 793; 13 Am. St. Rep., 660, in order to have a conviction under this Section, it is only necessary to prove that the defendant, under oath, swore to the statement of facts alleged in the indictment, and that the statement that he swore to was a "false representation." Assuming that the defendant was duly sworn and, under oath, made the statement alleged in the indictment to have been made by him, did he swear fasely—did he make a "false representation?" The question has been answered in the consideration of the twelfth exception. Holding that the books and records of the bank, admitted in evidence, and the testimony of the witness Mr. La Roque, as to the entries therein contained, should have been ex-

cluded, the transcript of the record discloses no proof that the defendant made "a false representation," and the defendant could not be convicted under this count. The other question raised under this exception as to what constitutes an oath, and whether or not the defendant was duly sworn and under oath made the alleged statement contained in the indictment, need not be considered and the Court expresses no opinion as to the same. We are of the opinion that his Honor erred in refusing defendant's motion for a directed verdict under the second count, and that his Honor should have directed a verdict of not guilty for the defendant under this count. This exception is therefore sustained.

It is not necessary to consider the remaining exceptions.

Let the indictment and the appellant's exceptions be reported.

. Judgment reversed.

MR. CHIEF JUSTICE WATTS concurs. MESSRS. JUSTICES COTHRAN, BLEASE and STABLER concur in result.

MR. JUSTICE COTHRAN: I concur in result, except that I think the case should be remanded for a new trial.