HENRY *v.* THE FRANCESTOWN SOAP-STONE COMPANY.

*(Circuit Court, D. New Hampshire.* January 30, 1880.)

PATENT—CONDITIONAL SALE OF INVENTION—SUBSEQUENT APPLICATION. A single conditional sale of an invention, more than two years before an application, works a forfeiture of a patent.

In Equity.

Bill in equity for infringement of a patent (No. 22,787) to Porter Dodge, granted February 1, 1859, for an improved air-tight stove, made of a double course of slabs or panels of soap-stone, held together by an iron frame. The application was prepared and signed December 26, 1856; a model was filed on the next day; the application was filed February 14, 1857.

In 1877, Judge Shepley entered a decree for the complainant. See *Henry* v. *Francestown Soap-Stone Co.* 9 Off. Gaz. 408. In February, 1879, Judge Clark granted a rehearing of the cause upon affidavits tending to prove that Dodge had sold one of his stoves to Harvey Huntoon, and another to John H. Patch, more than two years before his application. Evidence was taken and the rehearing was had before Judge Lowell.

*Causten Browne* and *Jabez S. Holmes,* for defendants.

*Thomas L. Livermore,* for complainant.

LOWELL, C. J. The evidence in the original case tended to show that Dodge made a few stoves, embodying his invention, in the autumn of 1854; that he was not fully satisfied with the iron part of the work, and caused it to be cast more care-

fully; and that he did not sell his stoves generally and extensively in the market until within two years before February 14, 1857, when his application was filed, but that he did sell the stoves which he then had, or some of them, in December, 1854, or January, 1855. Judge Shepley said (9 Off. Gaz. 409:) "There is but one sale clearly proved before February 14, 1855, and no evidence tending to show more than two or three sales before that time, and all of them accompanied with a notice of an intention to apply for a patent, and all of these during the time he was experimenting upon and before he had perfected his invention, and attained sufficient perfection in the castings to satisfy himself that his invention was practically successful. As in most, if not all, of these instances, the stoves were delivered on trial, to be returned if the invention did not work satisfactorily, they are to be regarded rather in the light of such practical tests as the law permits an inventor to make, than as such public sales as would tend to show abandonment, or mislead the public into a belief that the inventor had made a dedication to the public."

Upon the rehearing two more sales of stoves, one to Huntoon, and one to Patch, are proved to have been made by Dodge more than two years before February 14, 1857; but in that sold to Huntoon the inner panels of soap-stone appear to have been made of the full length of the frame, while the patent describes them as being cut shorter to allow for expansion upward. The defendants have introduced evidence that there is no need of shortening the inner lining, because soap-stone does not expand upward; and the plaintiff has evidence that it does or may expand in that direction. However this fact may be, this stove appears to have been made in what Dodge thought an imperfect form, and, therefore, may be held not a sale of the invention. *Draper* v. *Wattles,* 16 Off. Gaz. 629.

The inventor is dead, and the terms and particulars of the sale of the Patch stove are not proved; and I think it possible that, if the new evidence had been before Judge Shep-

ley, it would not have changed his opinion. He found one sale, and evidence which inclined him to think that there might have been two or three more, and yet sustained the patent. I find myself differing from my eminent predecessor upon the effect of the evidence, and have had great doubts as to my duty. I have determined that, as new evidence has been produced which I must act upon, my action must be in accordance with my own views of its effect. I cannot understand the new evidence without opening the whole record, and I must act upon what I find in the old and new evidence together.

In my opinion the evidence tends to show a sale of the invention. True, some sales were conditional; that is to say, the stoves were to be returned if they were not satisfactory to the buyers; but this does not, without further explanation, prove that they were experimental. It may show that the purchaser had doubts about the article, but does not prove any on the part of the seller. Sales in the usual course of business, whether absolute or conditional, if they are sales of the patented thing, work a forfeiture. A single sale has this effect, as well as a hundred sales. It is very unlikely that a buyer would take what he understood to be an experimental thing; but if he did, the evidence should be unequivocal that a test of the invention was one of the purposes of the seller. This article could be tested by the inventor as well in his own house as in any other place; and when he sold it in its completed form, though with warranty or on condition, he sold it.

Upon the facts, the stove appears to have contained the invention, within the doctrine of *Am. Hide, etc., Co.* v *Am. Tool Co.* 1 Holmes, 503, 513, in which Judge Shepley charged that the thing sold need not be perfect in the mechanical sense, but only in that it embodied the completed invention in a form which would be operative. Indeed, this stove appears to have been perfect in both senses, for it has been in successful use for about twenty-four years.

Judge Shepley found that the sales in evidence before him were made while the inventor was still conducting experi-

ments of his own. Granting, then, that the sales themselves were not experiments, and that at least two of the stoves contained the completed invention, does it save the forfeiture that the inventor himself was still trying his invention? I think not. The courts very properly limit the meaning of "public use" to a use in the ordinary way, and they may so limit the word "sale," if they can ever be persuaded of the fact; but, whether use or sale, that particular transaction must be experimental, or it is within the forfeiture of the statute.

But, further, I do not find the fact to be that the inventor was still experimenting. As I read the evidence, all that Dodge was then trying to do was to bring his stoves into the highest state of mechanical perfection. The precise day of the Patch sale is not proved; but it was in December, 1854, and the stove had upon it the words "registered for patent, 1854," which confirms the conclusion that it was after the invention was complete.

Neither filing the model, nor writing the paper commonly called an application, gives the date of the application from which the two years are to be reckoned. "Application," in this connection, includes the paper, or some written paper, and its presentation to the commissioner. One who desires a patent for his invention may apply in writing to the commissioner. There is no evidence that any writing accompanied the model, and none that any application was made until February 14, 1857. It would be most dangerous to hold that an application signed and kept in the inventor's pocket would answer the demand of the statute. In *Birdsall* v. *McDonald*, 6 Off. Gaz. 682, cited for the plaintiff, the solicitor neglected to file the application, and the court held that his neglect was not evidence of the inventor's abandonment of his invention. On the point of sale Mr. Justice Swayne says: "He sold no machine prior to two years before the filing of his application." As to filing the model see *Draper* v. *Wattles*, 16 Off. Gaz. 629.

The time allowed for the use and sale of the invention is

liberal, though arbitrary. It is a pity that a valuable invention should be lost by an inadvertence, but the policy of the law is well founded, and it must be carried out.

I find that this invention was "on sale" more than two years before the application, and therefore the patent was void. The patent having been sustained at the first hearing, the complainant should have his costs to the time when the rehearing was ordered. Of the rehearing itself I give no costs to either party.

Decree accordingly.