## UNITED STATES v. J. L. HOPKINS & CO.

(District Court, E. D. New York. October 19, 1912.)

**1. CRIMINAL LAW (§ 276*)—JURISDICTION—PLEA.**

Where defendant, a corporation located in the Southern district of New York, was indicted in the Eastern district for violating the Pure Food and Drugs Law (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1911, p. 1354]), an objection that it could only be prosecuted in the district where its principal place of business was located could not be raised by plea based on the wording of the information.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 636, 637; Dec. Dig. § 276.*]

**2. FOOD (§ 18*)—PURE FOOD AND DRUGS LAW—INTERSTATE COMMERCE—JURISDICTION.**

Pure Food and Drugs Law June 30, 1906, c. 3915, § 2, 34 Stat. 768 (U. S. Comp. St. Supp. 1911, p. 1354), prohibits the introduction into any state of any article of food or drugs adulterated and misbranded, and provides that any person who shall ship or deliver for shipment from any state to any other state any such adulterated article shall be guilty of a misdemeanor. *Held* that, since the statute relates solely to interstate commerce, no jurisdiction to prosecute for violation of the act can be acquired, except through the existence of interstate commerce.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 20; Dec. Dig. § 18.*]

**3. FOOD (§ 19*)—ADULTERATION—PURE FOOD AND DRUGS LAW—PROCEEDINGS OF SECRETARY OF AGRICULTURE—CERTIFICATION.**

Pure Food and Drugs Law June 30, 1906, c. 3915, § 4, 34 Stat. 769 (U. S. Comp. St. Supp. 1911, p. 1355), provides that the Secretary of Agriculture, after an investigation of the alleged violation of the law, shall at once certify the fact to the United States district attorney. *Held*, that such section requires the certification to the district attorney in whose district prosecution for the offense charged should be had.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 19.*]

**4. CRIMINAL LAW (§ 113*)—PURE FOOD AND DRUGS LAW—VIOLATION—VENUE—STATUTES.**

Pure Food and Drugs Law June 30, 1906, c. 3915, § 10, 34 Stat. 771 (U. S. Comp. St. Supp. 1911, p. 1360), providing for seizure of adulterated or misbranded goods within any district where they may be found, relates to civil proceedings against the goods only, and does not determine jurisdiction of a criminal prosecution.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 232; Dec. Dig. § 113.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

5. CRIMINAL LAW (§ 113*)—PURE FOOD AND DRUGS ACT—VIOLATION—PROSE-
    CUTION—VENUE.
        Pure Food and Drugs Law June 30, 1906, c. 3915, § 2, 34 Stat. 768 (U. S.
    Comp. St. Supp. 1911, p. 1354), prohibits the introduction into any state of
    any article of food or drugs, adulterated or misbranded, and declares that
    any person who shall ship or deliver for shipment, from any state to any
    other state, any such adulterated article, shall be guilty of a misdemean-
    or. *Held*, that the gist of the offense is the shipping or delivering for
    shipment of adulterated or misbranded goods, to be introduced into an-
    other state by interstate commerce, and hence jurisdiction exists in the
    federal court of the district from which the goods were shipped, though
    defendant did not reside in such district.
        [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 232; Dec.
    Dig. § 113.*
        What constitutes a violation of pure food regulations, see note to Brina
    v. United States, 105 C. C. A. 559.]
6. CRIMINAL LAW (§ 146*)—PURE FOOD AND DRUGS LAW—VIOLATION—LIM-
    ITATIONS.
        The general three-year statute of limitations applicable to crimes was
    not repealed by Pure Food and Drugs Law June 30, 1906, c. 3915, 34
    Stat. 768 (U. S. Comp. St. Supp. 1911, p. 1354), containing no specific
    limitation on prosecutions thereunder, so as to require immediate prose-
    cution on the theory that in case of delay, the right to prosecute would
    be barred by laches.
        [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 258½,
    259; Dec. Dig. § 146.*]

J. L. Hopkins & Co. was indicted for violating the Pure Food and
Drugs Law, and filed a plea in bar. Overruled.

William J. Youngs, U. S. Atty., of Brooklyn, N. Y., and William
P. Allen, Asst. U. S. Atty., of New York City.

Hitchings & Dow, of New York City (Hector M. Hitchings, of New
York City, of counsel), for defendant.

CHATFIELD, District Judge. An information has been filed
against the defendant company, charging a violation of Act June 30,
1906, c. 3915, known as the Pure Food and Drugs Law. The informa-
tion alleges that the defendant corporation, on September 1, 1909, did,
within the county of Kings and state of New York, unlawfully ship
and deliver for shipment, by a steamboat line, from Brooklyn to Nor-
folk, in the state of Virginia, a certain drug, which was not properly
branded as required by the statute. The other allegations have nothing
to do with the questions now raised by the defendant, who has inter-
posed a plea in bar, after appearing by attorney. This plea attacks,
first, the jurisdiction of the District Court, in this the Eastern district
of New York, alleging that the defendant corporation is organized
under the laws of the state of New York, with its office and principal
place of business within the Southern district, and not within the East-
ern district.

[1] This objection cannot be raised by a plea based upon the word-
ing of the information. On demurrer this objection would be unavail-
ing, for the wording of the information states specifically and solely
that the corporation was a corporation of this the Eastern district.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plea, therefore, is intended to raise an issue as to the actual district in which the corporation is domiciled. But this issue does not necessitate the taking of testimony, for the government has admitted that the place of business and principal office of the corporation is 100 William street, as stated by the defendant. For the purposes of the argument, therefore, we can take the statement of the plea to be a correct statement of fact, and consider whether or not a corporation, having its principal place of business and its home office in the Southern district of New York, and therefore having the right, under the statute relating to civil actions, to be sued only in that district, can present the same questions and insist upon the same rights, if charged with a crime under the statute upon which the present information is based.

[2] The law, in section 2, prohibits the *introduction into* any state of any article of food or drugs, adulterated or misbranded, and provides that any person who shall *ship* or *deliver for* shipment, from any state to any other state, any such adulterated article, shall be guilty of a misdemeanor. The defendant contends that, inasmuch as the statute relates to interstate commerce, no jurisdiction can be acquired, except through the existence of interstate commerce. That much of the defendant's contention is correct, and prosecution can be had in no district, except one in which prosecution is authorized and jurisdiction given by the statute. The question of regulation, or the manner of administration in the Department of Agriculture, could not prevail over the express language of the statute.

[3] In section 4 it is provided that the Secretary of Agriculture shall at once certify the fact to the *proper* United States district attorney. This means, and means no more, than that the proceedings shall be certified to the district attorney in whose district prosecution should be had.

[4] Section 10 provides for the seizure of goods within any district where the same may be found. But that relates to a civil proceeding against the goods themselves, and does not in any way determine in what jurisdiction a criminal proceeding can be brought. The provision of the Constitution, that the trial of all crimes shall be by jury, and such trial held in the state where the crime shall have been committed, does not in any way affect prosecution under this statute, for the state in which prosecution is to be had is clearly defined by the statute itself.

[5] The defendant claims that the prohibited act is the "introduction into" another state. Yet the defendant seems to admit that the prosecution can be had in the *state* of New York, although, if a strict construction were to be given to the defendant's argument, it would be necessary to hold that the crime occurred at the place of introduction of the goods into another state, thus making the place in which trial should be had the state where the goods are received, rather than that in which they are shipped. But this is contrary to the express provision of the statutes, which prohibits *introduction* into another state by interstate commerce, but makes the *crime* the shipping

or delivering for shipment at the place in which the commerce is instituted by the physical act of shipment.

The position taken by the defendant, however, is that the prosecution can only be brought in the district where the corporation, in so far as it is able, carries out the mental and physical process, through its agent, of setting in motion activities which shall result in the shipment of the goods through interstate commerce. But such a contention is not a literal statement of the words of the statute, nor would this law be capable of such application. Where two constructions of a statute are possible, one leading to a practical method of procedure, while the other leads only to an ineffectual or impossible position, the practical meaning should be taken, and the statute so construed as to accomplish the object for which it was intended, unless this object be plainly contrary to the results which would be obtained by the construction followed.

It is evident that the result of prosecution, in the present instance, in the Southern district of New York, would lead to a dismissal of an indictment; for no contract or order to cause the shipment of goods by interstate commerce could be construed as the actual act of shipment. Hence the result of such a holding would be to limit prosecution under the statute to a district where prosecution could not be successful, and such construction would have been made in the face of the plain statement that the crime consists of "shipping or offering for shipment," which is the act of starting the shipment of the goods by some common carrier, or other means of transportation, having as its first step a delivery for shipment. To hold otherwise would mean a differentiation in the possession of the goods by the defendant before they were packed, while they were packed up in the warehouse, and while they were on its delivery wagon or other means of transfer, and while its own possession of these goods was entirely undisturbed. For these reasons it is plain that the information is correct in form, in charging that the crime, if committed under the statute, began with the delivery of the goods to the steamship company in Brooklyn, and that prosecution should be had in this district.

The defendant also pleads the statute of limitations in an original way. The Pure Food and Drugs Law provides for a hearing upon notice, after examination, and, if an adulteration of a drug shall be found, that an opportunity of a hearing shall be given. If, after the hearing, it appears that any of the provisions of the act have been violated, the statute is specific and technical in its description of the acts prohibited, and in the statement of the penalty therefor. The defendant, therefore, invokes the well-known doctrine that a specific statute, repealing in terms, or in necessary effect, the provisions of the general statute, shall be held to prevail over all the provisions of a general statute, which are thus expressly or impliedly set aside.

[6] The general statute of limitations, formerly two years and now three years, by the statute of 1876 (Act April 13, 1876, c. 56, 19 Stat. 32 [U. S. Comp. St. 1901, p. 725]) is claimed by the de-

fendant to have been repealed, inasmuch as no specific limitation is placed upon the prosecution under the Pure Food and Drugs Law, and as the language of the sections throughout the entire statute indicates that immediate and prompt action is to be had. The defendant invokes the doctrine of laches, not so much as a sufficient defense to the prosecution of this information itself, but it relies upon that doctrine as an argument for its claim that the general statute of limitations is inapplicable, and hence that it is inferentially repealed through the intent spelled out of the requirement for immediate action.

The defendant would apparently seek to substitute for the general statute of limitations, of three years after the commission of an offense, an ambiguous and uncertain equitable determination by the court as to whether the proceedings had been so promptly conducted that the prosecution should be allowed to go on. The theory of a statute of limitations is no longer dependent upon the presumption of some grant freeing the person interested from prosecution, or the lapse of time within which the evidence has presumably been lost. It is rather a definite period prescribed by law, within which an indictment must be filed, provided the defendant is not a fugitive. There is nothing in the Pure Food and Drugs Law which interferes with the operation of a statute of three years, beyond which delay cannot be allowed. Whether or not laches on the part of the government officials had intervened, and whether the defendant's rights had thereby been prejudicially affected, or whether the act which was charged as an offense has been reduced to a mere technicality, would be something for the court to take into account in imposing sentence. But it cannot be said that the intent of Congress was to set up different standards or time limits for the actual filing of an indictment (either greater or less than three years as the case might be) by provisions in the law intended to assure a speedy hearing and a prompt method of determining whether acts would be considered by the department as violations of the law, from which a criminal prosecution might result. Even if the acts in question had been terminated, and the prosecution might thereby depend upon methods or practices long since discontinued, or if the defendant, because of the delay in instituting proceedings, had continued upon a course which it ultimately found would bring itself in conflict with the government, these matters, again, would be questions to be considered in imposing sentence, and are not a bar to the filing of an information at any time within the three-year period.

The pleas must be overruled, and the defendant called upon to plead generally to the information.