12589

STATE v. JOHNSTON *ET AL.*

(146 S. E., 657)

*Messrs. Gaston, Hamilton & Gaston,* for appellant, ▮

*Mr. John A. Marion,* also for appellant,

*Mr. Thos. F. McDow,* also for appellant,

*Solicitor J. Lyles Glenn* and *Messrs. J. H. Glenn,* and *Williams & Stewart,* for respondent,

February 11, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The appellant, D. C. Johnston, along with J. W. O'Neal and John R. Shurley, was indicted by the grand jury of

York County for the violation of the provisions of Section 244 of the Criminal Code, Vol. 2 of the Code of 1922. On his motion, Shurley was granted a change of venue from York to Fairfield County. The appellant, Johnston, and O'Neal were tried together in the Court of General Sessions for York County before his Honor, Circuit Judge William H. Grimball.

The first count of the indictment charged, in brief, that the defendants, as officers and directors of the Citizens' Bank & Trust Company, a banking corporation under the laws of this State, declared and paid a dividend on the capital stock of the said corporation when the said dividend had not been actually earned, in violation of law. The Court granted the motion of Johnston and O'Neal for a .directed verdict as to that count; accordingly, it is not especially involved in this appeal.

The second count of the indictment was as follows:

"That J. W. O'Neal, D. C. Johnston, and John R. Shurley,. late of the County and State aforesaid, on the 31st day of December, in the year of our Lord one thousand nine hundred twenty-six, at York, in the County of York, in the State aforesaid, each and all of the said J. W. O'Neal, D. C. Johnston, and John R. Shurley, being at that time officers and directors of Citizens Bank & Trust Company, a banking corporation organized and existing under the laws of the State of South Carolina, with its principal place of business in the City of Rock Hill, in the County of York and State of South Carolina, and vested by their official positions in the said banking corporation with authority, power and duty to examine, ascertain and know the true and correct condition of the said banking corporation, and actually by virtue of their management, control, and direction of the business affairs, moneys, funds and other properties, and being then and there actually engaged in the management of the said banking company, and well knowing its true and correct financial condition, did make, declare and publish a false statement in regard to the financial condition of the

said Citizens Bank & Trust Company, as it then existed; the said statement so made, declared and published being false in the following particulars:

"1. In that the said statement, when so made, declared and published, represented, that the said banking company had actually earned funds out of which to pay a dividend on the capital stock of the said banking company, and that it represented that the bank had a surplus theretofore earned and not set aside for a special purpose, upon the approval of the stockholders of the incorporated company to be affected, sufficient to pay a dividend on the capital stock of the said banking company.

"2. In that the said statement, when so made, declared and published, represented that the said banking company had on deposit a sum of money greatly in excess of the actual deposits.

"3. In that the said statement as so declared, made and published, failed to take into consideration, reflect or show in any way certain liabilities of the said Citizens Bank & Trust Company, among them a mortgage for one hundred thousand ($100,000.00) Dollars, on the new banking house owned and occupied by the said Citizens Bank & Trust Company, which said mortgage was existent, outstanding and unpaid.

"All to the great damage and injury of the depositors, creditors, and stockholders of the said Citizens Bank & Trust Company, and against the form of the Statute in such cases made and provided and against the peace and dignity of the State."

The appellant demurred to the second count in the indictment, and moved to quash the same on the following grounds:

"1. Because there is no allegation to show the nature of the statement alleged to have been made by the said defendants, and what the same consisted of.

"2. Because there is no allegation to show to whom the said alleged false statement was made.

"3. Because there is no allegation of the ignorance of its falsity by persons to whom it was made.

"4. Because there is no allegation that the said alleged false statement was intended to be acted upon.

"5. Because there is no allegation that it was acted upon to the damage of any one."

This motion was refused. On the evidence, the presiding Judge directed the jury not to consider the allegations of the first specification. The motion of the defendants for a directed verdict as to the second count of the indictment was refused.

The jury acquitted O'Neal, and found Johnston guilty as to the second count. He was sentenced by Judge Grimball to pay a fine of $3,000 or to serve 6 months.

From the verdict and sentence, Johnston has appealed to this Court. There are thirty exceptions, but, in our opinion, there are not near so many questions. We shall not attempt to pass upon each of the exceptions separately, but will consider all of them so far as we deem it necessary.

We shall consider, first, the objections made to the indictment. For a full understanding of the matter, it seems necessary to set out in full Section 244 of the Criminal Code, which is as follows:

"(244) § 122.  *No Dividends to be Paid unless Earned.* —It shall be unlawful for any incorporated company to pay any dividends on the capital stock of such company, unless the same have been actually earned, or are paid out of any surplus heretofore earned, and not set aside for a special purpose, upon the approval of the stockholders of the incorporated company to be affected.

"*Unlawful for Companies to Make False Statements.*— It shall be unlawful for any officer or director of any corporation or company to make any false statement in regard to the financial condition of such company or corporation.

"*Penalty.*—Any violation of this Section by the officers or agents of such company shall be punished by fine of not

less than five hundred dollars or imprisonment for not less than six months."

It is to be observed that the allegations of the indictment really involved in this case relate solely to the second subdivision, wherein it is made unlawful for an officer or director of a corporation to make a false statement in regard to the financial condition of such corporation.

The crime charged against the appellant was not known to the common law. It is distinctly a statutory offense. So far as our investigation discloses, no part of the statute has ever been before this Court for construction. The headnote of the second paragraph of the Section is somewhat misleading. It reads that it is "Unlawful for Companies to Make False Statements," while the language of the statute itself denounces as unlawful the act of an officer or director, not the corporation or company, in making the false statement referred to.

In considering the sufficiency of the indictment, it is necessary first of all to ascertain what is made a crime by the second subdivision of Section 244. The words of the greatest import therein are "false statement." Since these have a legal meaning, we must construe the language of this penal statute in accordance with that meaning.

2 Bouv. Law Dict. (3d Rev.), p. 1181, says of the word "false" that, "Applied to the intentional act of a responsible being, it implies a purpose to deceive."

Black's Law Dictionary defines "false" as follows: "In law, this word means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud."

"Statement" is defined to be: "A formal, exact, detailed presentation; the act of stating, reciting, or presenting, verbally or on paper." 36 Cyc., 817.

Black says of the word "statement": "In general sense an allegation; a declaration of matters of fact."

The word "false," in the expression "false statement," occurring in an Act of Congress, relating to an entry of

imported goods, was said by the Circuit Court of Appeals of the Eighth Circuit to mean "more than 'incorrect' or 'erroneous.' It implies wrong or culpable negligence, and signifies knowingly or negligently untrue." *U. S. v. Ninety-nine Diamonds*, 139 F., 961, 2 L. R. A. (N. S.), 185.

With the legal definitions of the "key words" in mind, therefore, the Act denounced as an offense, is *the making by an officer or director of any corporation or company to some other person of a statement (verbal or written) in regard to the financial condition of such corporation or company, which is false, and so known to be false by the maker, with the intention to deceive the person to whom the false statement is made or exhibited.*

The learned Circuit Judge, who presided at the trial of the case at bar, rightly conceived, in the main, according to our view, the intention of the law, and the necessary elements of the crime to be established. He instructed the jury very properly that, to convict the defendant, it was incumbent upon the State to establish these things: (1) That he was an officer or director of the named corporation; (2) that as such officer or director he made a statement in regard to the corporation's financial condition; (3) that the statement so made by him was false; (4) that the statement was material; (5) that the defendant knew the falsity of the statement; and (6) that it was the intention of the defendant that such false statement should be relied on by the person to whom it was made or exhibited, in the manner reasonably contemplated.

We agree also with the instructions of the Circuit Judge to the jury to the effect that a "material" statement means "a statement of such importance, that if it be false, and be relied on and acted on by others, injury would thereby result to those others." The instruction stated is supported by the definition of the word "material," given by Mr. Black, when he defines the word to mean: "Important; more or less necessary; having influence or effect; going to the merits, having to do with matter, as distinguished from form."

It is quite true that many of the formalities and technicalities required in indictments under the common law have been abrogated under the provisions of Section 89 of the Code of Criminal Procedure, Vol. 1, Code of 1922, which Section is as follows:

"Every indictment shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as now required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the same, or so plainly that the nature of the offense charged may be easily understood; and if the offense be a statutory offense, that the same be alleged to be contrary to the statute in such case made and provided."

But, in considering that Section of the Code, we must not forget the guaranty given to an accused in a criminal prosecution, that he is "to be fully informed of the nature and cause of the accusation." Constitution, Art. 1, § 18.

Mr. Justice Pope, speaking for this Court, said that the words, "to be fully informed of the nature and cause of the accusation," as contained in our present Constitution, were as strong as the language contained in Section 13 of Article 1 of the Constitution of 1868, where it was declared that one charged with crime should not be held to answer "until the same is fully, fairly, plainly, substantially and formally described to him." *State v. Jeffcoat,* 54 S. C., 196, 32 S. E., 298.

With both the constitutional and statutory provisions as to indictments before us, the inquiry then is, Did the indictment in this case charge the crime substantially in the language of the statute prohibiting the same, or so plainly that the nature of the offense charged therein could be easily understood; and did it meet the guaranty given the defendant "to be fully informed of the nature and cause of the accusation?"

The second count of the indictment, briefly stated, contained allegations as follows: (1) That the defendants were

officers and directors of a certain corporation name therein; (2) that they knew the true and correct financial condition of the corporation; (3) that they made a *false* statement in regard to that financial condition, and it set forth three distinct specifications as to the statements alleged to have been false; and (4) that such false statements were "to the great damage and injury of the depositors, creditors, and stockholders" of the corporation.

We do not think it is necessary for the State to allege or to prove that, as a result of the false statement made by an officer or director of a corporation, damage thereby resulted to any person, as so claimed by the appellant in his fifth objection to the indictment.

The statute under consideration is not similar to Section 134 of the Criminal Code, which makes it unlawful for an officer or stockholder of a corporation to knowingly and willfully make fraudulent misrepresentations as to the capital, property, or resources of the corporation. It is necessary, under the last-mentioned statute, to show damage to the person to whom the "fraudulent misrepresentations" were made. *State v. Bolyn,* 143 S. C., 63, 141 S. E., 165. There is quite a distinction in law between the words "false statement" and the other words "fraudulent misrepresentation." Under Section 244, it is not necessary to show injury or damage resulting from the making of the false statement. If it were necessary for the State to show injury or damage resulting from the making of a false statement, the second subdivision of Section 244, enacted in 1909, would not have been necessary, for Section 134, enacted originally in 1896, would probably have been entirely sufficient without further legislation along that line. In other words, it seems to us the distinction between the second subdivision of Section 244 and Section 134 is this: The first seeks to prevent false statements, which may result in injury, but have not so resulted; while Section 134 seeks to punish the making of misrepresentations, which have actually resulted in injury.

The indictment in the case at bar alleged, we think unnecessarily, damage and injury to the depositors, creditors, and stockholders. This, however, can properly be regarded as surplusage.

Under our conception of the law, the indictment was also entirely sufficient to meet the third and fourth grounds, upon which the instrument was attacked. The allegation that the defendants had made a false statement in itself carried the implication that the person to whom the statement was made was ignorant of its falsity, and that it was the intention of the maker to deceive such person and to cause him to act upon such false statement. The word *false* itself implied the purpose to deceive some one ignorant of the real truth.

It is also our opinion that the indictment met the first objection of the appellant, as it distinctly stated the nature of the statements alleged to have been made by the defendants, and further alleged to have been falsely made. The second specification averred that the defendants had made statements that the bank had on deposit a sum of money greatly in excess of the actual deposits. The third specification averred that the statement made failed to show a certain liability of the bank by way of mortgage to the extent of $100,000. These specifications sufficiently advised the defendants as to the false statements charged against them.

The serious objection to the indictment was the second, which challenged the instrument for failure to allege to whom the false statements were made. This should have been done, in our opinion.

Time, as the Circuit Judge charged the jury, is not an element of the offense created by the statute. Neither is there any law which limits the time in which a prosecution for the offense may be instituted. The State, therefore, could show the making of the false statement alleged against the appellant at any time previous to the finding of the indictment by the grand jury. In this respect the defendant is

at considerable disadvantage. To go further and require him to defend himself on the charge of making a false statement to some undisclosed person would not preserve to him his right, as declared by the Constitution, to be fully "informed" of the accusation against him. We do not even think an indictment that failed to disclose to whom the alleged false statement was made complied with the provisions of the Code of Criminal Procedure, which requires an indictment to be plain enough that the defendant may easily understand the nature of the offense charged against him. Because of this fatal defect in the indictment, the judgment below will have to be reversed.

Ordinarily, because of the view taken by the Court, it would not be necessary to discuss any other issues presented by the appeal in this case. But there are some important questions relating to the admission of certain evidence in the trial below, which, in our opinion, should be passed upon. We shall not attempt to review in detail each and every of the many exceptions pertaining to certain evidence offered in the case, but we shall endeavor to give, briefly, our views regarding some of the evidentiary matters involved, not only for the guidance of the lower Court in a retrial of this cause, but for the purpose of clearing up some seeming misunderstandings as to former holdings of this Court.

At the instance of the prosecution, the Circuit Judge allowed to be introduced in evidence many of the books, records, and papers of the bank and of the Citizens' Trust Company, an associate corporation of the bank. The defendant was not only a director and vice president of the bank, but he was a director and president of the trust company. His counsel objected to the introduction of any book, record or paper, or any entry in any book of either of the two corporations, until there was evidence to show that such books, records, and papers and the entries in books sought to be introduced were made by the defendant, or under his immediate supervision or direction. The objections so made were based upon the authority of the case

of the *State v. Bolyn,* 143 S. C., 63, 141 S. E., 165. The Circuit Judge overruled most of the objections interposed, and made the statement, in effect, that he did not consider the *Bolyn case* as authority to justify him in agreeing to the view of the appellant's counsel.

In the *Bolyn case,* the defendant was a director and cashier of an involved bank. He was charged with the Violation of Section 134 of the Criminal Code, in the making of certain fraudulent misrepresentations as to the capital, resources, and property of the bank and for willful perjury. His counsel objected to the admission of the records and books of the bank in evidence on the ground that there was a "total absence of evidence tending to show that such records had been made by the defendant." On appeal to this Court, Mr. Justice Carter, writing the opinion, held that there was error, and the Chief Justice concurred in that holding. The three other members of the Court concurred only in the result of the judgment of this Court. The Circuit Judge, in the trial of this case, was therefore correct in his statement that it did not appear that a majority of the Court had concurred in the holding of Mr. Justice Carter on the point mentioned.

The books and records in the *Bolyn case* were admitted upon the testimony of Mr. La Roque that he was the liquidating agent for the Receiver of the bank, the State Bank Examiner, and, as such representative of the Examiner, he had custody of the books and documents of the bank in his possession; that, when he took charge as liquidating agent, the defendant was in temporary charge of the bank as the Receiver of the Examiner, and turned the books and records over to Mr. La Roque.

Said Mr. Justice Carter, in his opinion: "There was no evidence that the defendant made the entries in these books and other records, and no evidence that he was in any way responsible for the entries made therein. On the other hand, the testimony tended to show that the entries were made by other employees of the bank. Mr. H. A. Lewis was vice

president in charge of the bank, and the defendant was cashier under him; J. O. Lewis was assistant cashier, and there were also other employees who worked in the bank. The witness did not know who made the entries in these books and records, but was under the impression that all of the employees in the bank might have worked on the books. In our opinion, the showing was insufficient for admission of the books and records in evidence and that his Honor erred in admitting them in evidence."

It is to be noted that the conclusion of Mr. Justice Carter was based, as he stated, upon a number of decisions of this Court, and upon the authority of certain principles stated in Cyclopedia of Law and Procedure. There was, however, no quotation from any of the supporting authorities. The cases cited by Mr. Justice Carter were suits on account for goods alleged to have been sold and delivered. In all the cases referred to appears the same principle in the law of evidence which is announced in 17 Cyc., 388, as follows: "The general rule established at common law and adopted by statute in many jurisdictions, with slight modifications in some instances, is that book entries should be proved or corroborated by the Clerk, servant, or other person making them, if he is alive and can be produced. Testimony of a party or the person for whom the books are kept or of another clerk or servant or of third persons generally will not in the absence of statute be sufficient for this purpose."

We call attention to the fact that in the *Bolyn case* the witness, Mr. La Roque, by whom it was sought to prove the books and records, had not made any of the entries therein, and had not seen any of them made. It does not appear from the report of the case that there was any additional proof as to the books and records and the entries therein contained.

We think what has caused some of the confusion in understanding the opinion in the *Bolyn case* is due to the statement in the opinion that *"There was no evidence that the defendant made the entries in these books and other records, and*

*no evidence that he was in any way responsible for the en-tries made therein."* It was the intention of Mr. Justice Carter, we are sure, by that statement, to indicate that, if it had been established that the defendant made the entries in the books, or that he was directly responsible for their having been made, the books would have been admissible, for that conclusion, in our opinion, would have been a correct statement of the law.

Our understanding of the law is that, in a case like the one at bar, books, records and other papers pertaining to the affairs of a corporation can be admitted in evidence upon testimony by some one in position to know that they are the books, records and papers of the corporation. The question in this case is not the same as when it is sought to establish the sale and delivery of goods by a book account. In an instance of the latter kind, the law requires, ordinarily, the account to be proved on the oath of the person who made the entries, and, if the testimony of such person cannot be obtained because of death, insanity, or some other disqualification as a witness, or because of absence from the jurisdiction of the Court, that then the account may be proved on the oath of some person who can testify as to the handwriting of the party who made the entries.

In the *Bolyn case,* it did not appear that Mr. La Roque had kept the books or had been employed by the bank. In the case at bar, several employees of the bank, and persons who also kept the books of the trust company, identified the books, records, and papers of the two corporations. We cannot think that it is always necessary, in order to prove the books of a corporation, in a case like the one at bar, to show by each and every employee of the corporation what entries and records were made by him. If this were true, in a case where all the officers and employees of the bank were charged with some fraud or conspiracy to defraud, it would be impossible often for the State to prove the books of the institution, since the defendants could not be called to the witness stand to testify against themselves.

The purposes of the introduction of the books, records and papers of the corporations involved in this case were to show what was the real financial condition of the bank, and to establish the fact that the defendants had knowledge of that condition. For these purposes, these exhibits were competent evidence. They were properly identified, and there was no error in their admission.

The state was allowed to offer in evidence, through the testimony of the clerk of Court, the record of a mortgage of real estate, as shown from the record of real estate mortgages in the clerk's office, a certain mortgage executed by Citizens' Trust Company, the payment of which, it was claimed, had been assumed by the bank, which mortgage covered the banking house owned by the banking corporation. No notice was given the defendant that this secondary evidence would be offered. There was no showing that the original mortgage had been lost, or destroyed, or could not be produced for some other reason. The appellant objected to the introduction of the record.

The rules of evidence are generally the same in criminal as in civil cases. *State v. Rawls*, 2 Nott & McC. (11 S. C. L.), 331; *State v. Clyburn*, 16 S. C., 375.

We do not think the proper showing was made to permit the introduction of this record. At the same time, there was no prejudicial error committed, for the reason that it appeared from other proper evidence submitted that the mortgage had been executed and was still an outstanding obligation of the bank. In fact, it seems to have been admitted by the defendant that the bank owed the indebtedness represented and secured by this mortgage.

The State was also allowed to prove the contents, or rather some of the contents, of a certain draft by Highland Park Manufacturing Company, and placed in the bank for collection. There was a dispute as to the contents of this paper. It was admitted, however, that, after the bank had been closed and turned over to the State Bank Examiner, the defendant, through one of the employees of

the bank, had secured a draft of the Highland Park Manufacturing Company, which he had destroyed. There was no notice requiring the production of the paper, and that secondary evidence as to its contents would be offered. It is not necessary to give notice before offering testimony as to the contents of a paper, when it is shown that the paper was obtained by the fraud of the adverse party. 22 C. J., 1061. See, also, the case of *Executors of Gray v. Kernahan,* 2 Mill, Const. (9 S. C. L.), 65, cited in *Corpus Juris.* There was no error as alleged by appellant.

The "false statements," for the making of which the appellant was convicted, were contained in the "Called Statement" of the bank to the State Bank Examiner on December 31, 1926, sworn to by the cashier of the bank and verified by the appellant as one of the directors of the institution. The State was allowed to introduce in evidence the "Called Statement" made by the officials of the bank on June 30, 1926, which was also verified as correct by the appellant in his capacity as director. The State also sought to introduce "Called Statements" verified by the appellant prior to the one of June 30, 1926, but the trial Judge held those statements too remote. The appellant questions the ruling of the Court in permitting the introduction of the statement of June 30th. The rulings of the presiding Judge as to the introduction of these papers were too favorable, in our opinion, to the defendant. Any paper or statement made by the appellant, or in which he participated in any way, which tended to prove his knowledge of the real financial condition of the bank, was proper evidence. He was charged with making a "false statement" as to the financial condition of the institution. It was necessary for the State to show that the statement made by him; on which the charge was based, was untrue, and further that the defendant knew it was untrue. The former statements signed by the defendant, if they set forth the real financial condition of the bank, were competent to show that he was aware of

what the condition was. If these statements did not correctly set forth the true financial condition of the institution, they were competent, nevertheless, for the purpose of showing the intent of the defendant in making statements which were not truly representative of the financial condition of the bank. It is urged that, if the previous statements were false, the effect was to try the defendant for other crimes than those charged against him in the indictment. Even if this contention should be correct, we think it was proper for the former statements to be introduced to show the motive and intent of the defendant and the absence of mistake or accident on his part in making the statement charged by the State to have been false. See, *State v. Lyle,* 125 S. C., 406, 118 S. E., 803.

There was no error in the refusal of the trial Judge to direct a verdict of not guilty in favor of the defendant. In considering the exceptions which raise this question, we are required only to see if the record shows there was any testimony adduced by the State tending to prove the defendant's guilt. We find there was such testimony. We do not mean by this statement to indicate any opinion of our own as to the defendant's guilt or innocence. The question of the guilt or innocence was entirely a matter within the province of the jury. In view of the fact that there is to be a reversal of the cause, we do not enter into a discussion of the evidence in the case; for, however careful we might be in discussing, or even stating, the evidence, something said by us might be regarded as an indication of our opinion as to the weight or value of the evidence for or against the defendant.

The judgment of this Court is that the judgment of the Court of General Sessions of York County as to the appellant be, and the same is hereby, reversed, and the case be remanded to that Court for a new trial.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN and STABLER concur.

MR. JUSTICE CARTER concurs in result.