## REASS v. UNITED STATES.
### No. 4352.

Circuit Court of Appeals, Fourth Circuit.
Nov. 10, 1938.

Lester C. Hess and Howard D. Matthews, both of Wheeling, W. Va. (Handlan, Garden & Matthews, of Wheeling, W. Va., on the brief), for appellant.

Joe V. Gibson, U. S. Atty., of Kingwood, W. Va. (Bantz W. Craddock, Asst. U. S. Atty., of Glenville, W. Va., and Thomas P. O'Brien, Asst. U. S. Atty., of Wheeling, W. Va., on the brief), for the United States.

Before SOPER, Circuit Judge, and WEBB and CHESNUT, District Judges.

SOPER, Circuit Judge.

The decision of this case turns on the question whether the venue was properly laid in the Northern District of West Virginia where the defendant in the District Court was tried for violation of Section 1441(a) of title 12 U.S.C.A., which provides in substance that whoever makes any statement, knowing it be false, for the purpose of influencing in any way the action of a Federal Home Loan Bank upon any application for loan shall be punished by a fine of not more than $5000 or imprisoned for not more than two years, or both. The second count of the indictment, which is typical of the others, charges that on November 13, 1933, at the city of Wheeling, County of Ohio, in the State of West Virginia, the defendant, acting as the secretary of the Wheeling Savings and Loan Association, a corporation organized and doing business under the laws of the State of West Virginia, did wilfully and feloni-

ously make a certain statement, knowing it to be false, for the purpose of influencing the action of the Federal Home Loan Bank of Pittsburg, Pennsylvania upon a certain application for a loan of $16,000 filed with and presented to the bank by the defendant, as secretary of the Association, to wit: that all the mortgage loans and deeds of trust, submitted by the defendant as collateral security for the proposed loan, were first liens upon the property therein described, whereas in truth and in fact, as the defendant well knew, certain of said mortgages and deeds of trust were not first liens upon the property therein described. The defendant was convicted on three counts of the indictment which charged separate offenses and the sentence of the court was that the defendant be imprisoned in the penitentiary for two years on each count, the sentences to run consecutively.

In response to a motion of the defendant in an early stage of the proceeding in the District Court, the United States Attorney filed a bill of particulars which showed that the applications for the loans described in the three counts of the indictment were filed on specified dates in November or December, 1933 at Pittsburg; and that all the applications and statements were made[1] in Wheeling, West Virginia. Copies of the applications and statements and descriptions of the mortgages and deeds of trust, submitted therewith as collateral, were attached. The statements and applications were prepared on printed forms supplied by the bank. They bore, when filled out, the heading "Wheeling, West Virginia", and the date; they included the amount of the loan applied for, a description of the mortgage loans submitted as collateral therewith, together with the representation and certificate that each of the loans was a first lien upon the real estate therein described; they were signed on behalf of the association by its president and by the defendant as its secretary; and there was attached a certificate also signed by the defendant as secretary that he had personally verified the facts stated in the applications and that they were true.

The evidence tended to show that the bank required all applications to be filed with it at Pittsburg; that the applications in this case were prepared, filled out and signed by the president of the Association

and by the defendant as its secretary in Wheeling; that the applications were not mailed but were taken in person by the defendant from Wheeling to Pittsburg where he attached the corporate seal of the corporation, signed the certificate of personal knowledge and correctness, and presented the applications thus made complete to the bank. The defendant was uncertain whether he affixed his signature to the body of the applications in Wheeling as the testimony of the president of the association indicated, or in Pittsburg; but whether they were signed by the defendant in one city or the other, it is a fair conclusion from the evidence that they were prepared under his supervision in Wheeling, and it is conceded that the presentation of the applications by the defendant on behalf of the Association to the bank took place in the City of Pittsburg.

Throughout the proceedings in the District Court, the contention was persistently raised by the defendant that the crimes, if any were committed, took place in Pittsburg and not in Wheeling, and that therefore the court lacked jurisdiction to try the case in view of the provisions of Article 3, Section 2, Paragraph 3 and of the Sixth Amendment of the Federal Constitution, U.S.C.A.Const. art. 3, § 2, cl. 3; Amend. 6, that the trial of a crime shall be held in the state and district wherein the crime shall have been committed. The point was made by motion to quash the indictment and by demurrer to the indictment which were presented both before and after the bill of particulars was filed, by objections to the admission of the applications in evidence, by motions for a directed verdict of not guilty and by exceptions to the judge's charge and his refusal to grant certain instructions to the jury offered by the defendant. The court, however, rejected the contention on the ground that the applications, although not filed, were prepared by the defendant in West Virginia. The court was of the opinion that the indictment charged offenses begun in one district and completed in another, and therefore fell within the purview of Section 42 of the Judicial Code, 28 U.S.C.A. § 103, which provides that when any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be tried and punished in either

---

[1] "Made" is here used in the sense of "composed."

district in the same manner as if it had been actually and wholly committed therein.

This statute is particularly applicable to the jurisdiction over crimes which consist of two or more distinct elements or acts that may be committed in different districts, such as the crime of conspiracy which, under the federal statute, consists not only of the unlawful agreement, but also of the commission of an overt act in furtherance thereof. Indeed the statute was originally a part of the statute with reference to conspiracy. It is established that jurisdiction of the crime of conspiracy lies either where the unlawful agreement was made or where any overt act took place. Hyde v. Shine, 199 U.S. 62, 25 S.Ct. 760, 50 L.Ed. 90; Haas v. Henkel, 216 U.S. 462, 30 S. Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112; Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Grayson v. United States, 6 Cir., 272 F. 553; Grigg v. Bolton, 9 Cir., 53 F.2d 158.[2]

The statute is often invoked to establish jurisdiction over crimes which involve the mailing of a letter from one district to another, as in the presentation of a fraudulent claim to a government official. Thus in Bridgeman v. United States, 9 Cir., 140 F. 577 and United States v. Downey, D.C., 257 F. 366, it was held that the offense was commenced and therefore triable where the letter was mailed; and in Benson v. Henkel, 198 U.S. 1, 25 S.Ct. 569, 49 L.Ed. 919 and In re Palliser, 136 U.S. 257, 10 S.Ct. 1034, 34 L.Ed. 514, the offense was held cognizable where the letter was received. The principle on which the jurisdiction is established over crimes which begin in one district and end in another is enunciated in United States v. Lombardo, 241 U.S. 73, 77, 36 S.Ct. 508, 510, 60 L.Ed. 897, as follows: "Undoubtedly where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done; or where it may be said there is a continuously moving act, commencing with the offender and hence ultimately consummated through him, as the mailing of a letter; or where there is a confederation in purpose between two or more persons, its execution being by acts elsewhere, as in conspiracy."

On the other hand, a crime may lack continuity of performance and may consist of a single act which occurs at one time and at one place in which only it may be tried, although preparations for its commission may take place elsewhere. Such are offenses which involve the filing of formal documents, such as certificates or reports at a designated office. See United States v. Lombardo, supra; Wampler v. Snyder, 62 App. D.C. 215, 66 F.2d 195; Bowles v. United States, 4 Cir., 73 F.2d 772. In the Wampler case the defendant placed an income tax return in the mail in the City of Washington for delivery to the Collector of Internal Revenue in Baltimore in accordance with the statute, 26 U.S.C.A. § 2053, now 26 U. S.C.A. § 53, which required that the return "shall be made" to the collector. It was held that a mere placing of the returns in the mail was not a compliance with the statute and that the words "shall be made" are equivalent to the words "shall be filed". See, also, Rumely v. McCarthy, 250 U.S. 283, 39 S.Ct. 483, 63 L.Ed. 983; Henry v. Francestown Soap-Stone Co., C.C., 2 F. 78.[3]

---

[2] Similarly, crimes which involve the shipment of goods from one state to another are triable either in the state from which the goods are sent or in the state in which they are delivered. United States v. Freeman, 239 U.S. 117, 36 S.Ct. 32, 60 L.Ed. 172; United States v. Alaska Cons. Canneries, D.C., 2 F.2d 614; United States v. J. L. Hopkins & Co., D.C., 199 F. 649; and embezzlement of funds may be tried in the District where the defendant acquires possession of them or in another district to which he takes them. In re Richter, D.C., 100 F. 295; Smith v. United States, 5 Cir., 288 F. 44. The continuity of these offenses bring them within the purview of the statute. It is also applicable where separate acts performed in different jurisdictions are necessary to the completion of the offense as happened in the abstraction of the funds of a bank in Putnam v. United States, 162 U.S. 687, 708, 16 S.Ct. 923, 40 L.Ed. 1118, and in the issuance of a certificate of deposit with intent to injure a bank in Simpson v. United States, 9 Cir., 229 F. 940.

[3] In conformity with the same principle, it was held in the case of In re Buell, 4 Fed.Cas. p. 587, No. 2,102, that the federal court in the District of Columbia did not have jurisdiction to try a charge of criminal libel when the indictment showed that the libelous article was composed in Washington and then sent by mail to Detroit for publication; and in Conley v. United States, 4 Cir., 23 F. 2d 226 it was held that a federal court in

The case at bar belongs, in our opinion, in the latter class. The statute on which the indictment is based was passed to protect the Federal Home Loan Banks from fraudulent attempts to secure favorable action on applications for loans and like matters. The gist of the offense is the attempt to influence the corporation, as was held in regard to the companion section 8 (a) of the Home Owners' Loan Act, 12 U.S. C.A. § 1467(a); United States v. Kreidler, D.C., 11 F.Supp. 402; Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607, and communication of the false statements to the corporation constitutes the very essence of the crime. It is in this sense that the statute condemns the making of a false statement for the purpose of influencing the bank.[4] The mere assembling of the material and its arrangement in a written composition containing the misrepresentations of fact can have no effect, and it is only when they are communicated to the lending bank that the crime takes place. It follows that the acts performed by the defendant in Wheeling, although preparatory to the commission of the crime, were no part of the crime itself. That took place entirely in Pittsburg where the writing previously prepared was presented to the bank. We have no occasion in this case to consider whether the offense would have been cognizable in West Virginia, if the defendant had entrusted the application to the mails in Wheeling for delivery to the bank in Pittsburg, for, as the evidence shows, he took the application in person to Pittsburg and presented it to the bank.

We find support for our view in decisions which have construed similar statutory language. Thus, in People v. Mueller, 352 Ill. 124, 131, 185 N.E. 239, the court construed a statute which made it unlawful for any officer of a bank wilfully and knowingly to subscribe to or make any false statement with intent to deceive an examiner of the bank, and it was held that the statute contemplated that the statement must be made to a person authorized to examine into the affairs of the bank. In State v. Johnston, 149 S.C. 195, 146 S.E. 657, the stat-ute under consideration made it unlawful for any officer of a corporation to make a false statement in regard to the financial condition of the corporation. The court said that the offense denounced was the making of the false statement by an officer of the corporation to some other person, and held defective an indictment which failed to allege to whom the false statement was made. In State v. O'Neil, 24 Idaho 582, 135 P. 60, the statute involved made it an offense for any person knowingly to make or publish in any way any book or report concerning the financial condition of the bank which contained a false statement. The court said: "The word 'makes' as used in that section, has a meaning broad enough to cover the complete commission of the crime defined in said section. It does not have the strained and technical meaning which counsel for appellant would attribute to it. It does not mean the physical or manual act of writing or transcribing the report, nor does it mean the signing of the report or the swearing to the report. The making of the report is the issuance of the report."

Reversed.

---

North Carolina did not have jurisdiction to try an indictment for the fraudulent alteration of Liberty Bonds which after alteration were found in the possession of the defendant in Michigan, although it was proved that the bonds had been stolen in North Carolina, because there was no evidence to show that the alteration had taken place in that state. See, also, Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482.

[4] An accepted definition of the word "make" in the Century Dictionary is to put forth; give out; deliver; as to make a speech.