**UNITED STATES v. VALENTI.**

**No. 10930.**

United States Court of Appeals Third Circuit.

Argued July 13, 1953.

Decided Sept. 15, 1953.

See, also, D.C., 106 F.Supp. 121.

Thomas D. McBride, Philadelphia, (Samuel P. Orlando, Camden, N. J., on the brief), for appellant.

Alexander Feinberg, Sp. Asst. U. S. Atty., Camden, N. J. (William F. Tompkins, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The defendant was indicted in the United States District Court for the District of New Jersey on the charge of making in Camden, New Jersey, a false statement in a matter within the jurisdiction of the National Labor Relations Board in an "Affidavit of Noncommunist Union Officer", namely, that he was not a member of the Communist Party or affiliated therewith. At the conclusion of the evidence at the defendant's trial he moved for a judgment of acquittal on the ground, inter alia, that the venue jurisdiction of the court had not been shown. The motion was denied, the jury rendered a verdict of guilty upon which the defendant was sentenced to five years imprisonment, and the present appeal followed. The defendant on appeal renews his contention that the court lacked venue jurisdiction of the offense and also asserts that the trial judge committed reversible error in the conduct of the trial and in the charge to the jury.

In considering the question of venue it is necessary that we determine the exact nature of the offense with which the defendant was charged. The indictment was brought under section 1001 of title 18, United States Code, which is as follows:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

It will be observed that section 1001 is directed to the making of a false statement "in any matter within the jurisdiction of any department or agency of the United States". In the present case the false statement is alleged to have been made in a noncommunist affidavit by a union officer "in a matter within the jurisdiction of the National Labor Relations Board." It is thus clear that the determination of the offense depends upon the nature and extent of the jurisdiction of that Board in the premises. This is to be found in section 9(h) of the National Labor Relations Act, as added

by the Labor Management Relations Act, which is as follows:

"(h) No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of sections 286, 287, 1001, 1022, and 1023 of Title 18 shall be applicable in respect to such affidavits." [1]

Section 9(h) thus contemplates that the officers of a union may place "on file with the Board" the noncommunist affidavits described in the section upon the filing of which, but not before, the Board may make investigations and issue complaints at the instance of the union. The section further expressly makes the provisions of section 1001 of title 18 applicable to such affidavits. It is to be observed that there is no duty imposed upon union officers to make or file noncommunist affidavits. Whether or not they do so is wholly a matter of their own volition and that of their union. The statute does not command it and the Board does not require it. If, however, union officers choose to place such affidavits on file with the Board certain definite consequences, beneficial to their union, will result. For in that event the union will become entitled to avail itself of the processes of the Board previously closed to it.

■ It will thus be seen that the act having legal significance is the filing of the noncommunist affidavit with the Board. Until the affidavit has been delivered to the Board to be placed "on file" it has had no legal effect whatever. Until then the Board is not empowered to deal with it or to act in the light of it; it is therefore not yet a matter which has come within the jurisdiction of the Board. It follows that the crime denounced by section 1001 of title 18, read in the light of section 9(h) of the National Labor Relations Act, is the act of filing a false noncommunist affidavit with the National Labor Relations Board and not the act of signing such an affidavit or swearing to its truth. While the matter may constitute the crime of perjury under state law, a false statement has not been made in a matter within the jurisdiction of the National Labor Relations Board, within the meaning of section 1001, until the affidavit through its filing has become the basis for action by the Board. Compare Reass v. United States, 4 Cir., 1938, 99 F.2d 752, and United States v. Borow, D.C.N.J.1951, 101 F. Supp. 211, in which similar conclusions were reached under analogous statutes.

■ The evidence in this case was that the defendant signed and swore to the noncommunist affidavit in Camden, New Jersey. The notary public who took the affidavit was an office secretary of the defendant's union in Camden. She testified that she did not remember exactly what she did with the affidavit. The Board's regulations, however, provide that the affidavit of a local union officer is to be filed with the regional director of the Board in the region in which the local union customarily files its cases.[2] The printed form of affidavit which was used by the defendant contained the same instructions. It is con-

---

1. 29 U.S.C.A. § 159(h).

2. 29 CFR § 101.3(b).

ceded that the regional director's office at which the defendant's affidavit should have been filed under this regulation is located in Philadelphia, Pennsylvania. There was, however, no evidence whatever as to where or how it was filed other than the testimony of the Board's affidavit compliance officer who produced the original affidavit from the files of the Board in Washington and stated that it came through the mail to the Washington office. This he inferred from the manner in which its receipt was indicated on the affidavit but, since he was not affidavit compliance officer at the time of receipt, he could not say from whence it came. On this state of the evidence it was obvious that the affidavit must have been filed with the Board either in Philadelphia, as the regulations provided, or in Washington. It could not have been filed in New Jersey since the Board had no regional director's office in that state.

■ The Government urges, however, that the jury was entitled to infer that the affidavit was mailed in Camden either to Philadelphia or Washington, that the act of mailing was the beginning of the crime and that this was sufficient to give the district court venue jurisdiction under the continuing offense statute, section 3237 of title 18, United States Code. We do not agree. We may test the proposition by considering a hypothetical case in which the affidavit is lost in the mails and never reaches the Board. It is clear that section 1001 has not been violated in that case since the affidavit never gets "on file with the Board" so that it can be dealt with or so that the Board's processes can be started under section 9(h) at the union's request. It follows, therefore, that the actual filing of a false affidavit with the Board is necessary to constitute the crime denounced by section 1001 and that constructive filing by delivery to the post office is not enough.

■ The case in this respect is governed in principle by the rule laid down by the Supreme Court in United States v. Lombardo, 1916, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897, holding that where the gist of an offense involves the question of the filing of a document with a public official, the offense is committed at the place fixed for filing and is not a continuing offense commencing at the place of mailing. In that case Justice McKenna said, 241 U.S. at page 78, 36 S.Ct at page 510:

"A court is constrained by the meaning of the words of a statute. They mark the extent of its power, and our attention has not been called to any case which decides that the requirement of a statute, whether to secure or preserve a right or to avoid the guilt of a crime, that a paper shall be filed with a particular officer, is satisfied by a deposit in the post-office at some distant place. To so hold would create revolutions in the procedure of the law and the regulation of rights. In instances it might, indeed, be convenient; in others, and most others, it would result in confusion and controversies; and we would have the clash of oral testimonies for the certain evidence of the paper in the files. We hesitate, in order to accommodate the venue of a particular offense, to introduce such confusion. And would it not, besides, in particular cases, preclude the possibility of a conviction, putting evidence entirely in the hands of the defendant?"

This language of the Supreme Court applies with compelling force to the case before us in which the Government seeks by a dubious inference as to the place of mailing, sought to be drawn from wholly inadequate testimony, to establish the venue jurisdiction of the district court. Article III, § 2, clause 3, of the Constitution, as well as the Sixth Amendment, requires that all crimes be tried in the state and district in which they have been committed. As the Supreme Court pointed out in United States v. Johnson, 1944, 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236, venue in criminal cases is not a mere matter of formal procedure but raises deep issues of public policy under the Constitution.

It is clear from what has been said that the crime with which this defendant was charged was not and could not have been committed in the district of New Jersey. The District Court for that district accordingly did not have venue jurisdiction and should have granted the defendant's motion for a judgment of acquittal. This conclusion makes it unnecessary for us to consider the other contentions made by the defendant on this appeal.

The judgment of the district court will be reversed and the cause will be remanded with directions to enter a judgment of acquittal.

HASTIE, Circuit Judge (concurring).

I agree with the result the court reaches because I think proof was insufficient to establish venue in the District of New Jersey. I do not agree that in this type of case, as a matter of law, venue can be only in the place where the National Labor Relations Board receives the affidavit.

We have here one of the many situations in which there is a lapse of time and a change of locale between the final wilful misconduct of the wrongdoer and the accomplishment of the intended result which the criminal law punishes. The law student is introduced to this type of problem with the case of the gunman who fires across the state line to strike and kill his victim or, more nearly analogous to the present case, the poisoner who in California places a lethal capsule among the therapeutics in the victim's pill box, intending that the poison be consumed in the regular course of user, with the result that a month later the victim, while cruising in the South Pacific, swallows the poison and dies.

In such cases we use the convenient terminology that the offense "begins" where the wrongdoer finishes his active participation, although the offense is later "completed" elsewhere. At the same time we avoid potentially undesirable extensions of this conception by characterizing steps taken by the wrongdoer short of finishing his own active participation as "mere preparation". Indictment and trial of the accused either where the offense was thus "begun" or where it was "completed" is regarded as both fair to the accused and consistent with our notion that the punishment of crime should be in the place of the offense. For present purposes the conception is authoritatively embodied in the provision of Section 3237 of Title 18 U.S.C. that "any offense against the United States begun in one district and completed in another * * * may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 62 Stat. 826 (1948), 18 U.S.C. § 3237 (1952 Supp.)

In the conventional terminology of the quoted statute the present offense was "completed" at the time and place that the affidavit reached an appropriate office of the National Labor Relations Board. At the other extreme it was not even "begun" until the affiant, in addition to signing and swearing to a false statement, put the affidavit out of his possession and into some appropriate custody or channel for transmission to the Board.[1] However, at that point I think the offense was "begun" with the result that when, thereafter, the offense was completed it became indictable either at the place of its beginning or the place of its completion.

The shortcoming of the government's case is that the things proved to have taken place in Camden, New Jersey fall in the preparation category. Only the execution of the affidavit is shown to have occurred in New Jersey. There was no proof whether the defendant, who was

1. The existence of this distinction allowing a *locus poenitentiae* during the period of "preparation" when the actor has not decisively committed himself explains such cases as Reass v. United States, 4 Cir., 1938, 99 F.2d 752, and United States v. Borow, D.N.J.1951, 101 F.Supp. 211. Cf. Bridgeman v. United States, 9 Cir., 1905, 140 F. 577.

the business agent of the union, mailed the affidavit in that district, or left it at the union office in Camden for transmission to the Board, or personally delivered it to the regional office of the Board just across the river in Philadelphia. On the evidence, a choice of either of the first two alternatives, which would show venue in New Jersey, rather than the third, which would not, could have been achieved only by speculation. Hence the government failed to establish venue in the District of New Jersey and the defendant's motion for acquittal should have been granted.